FRED H. POTTER v. THE SAGINAW UNION STREET RAILWAY.

*Corporations—Exercise of franchise—Operation of street railroad by electricity—Equity—Injunction.*

1. Whether a corporation is exercising a franchise or right within legislative authority is a question to be inquired into by the State.

2. A mere *apprehension* that injury *may* result to the property of a complainant by the substitution by a street railway company of electricity as a motive power will not warrant the court in

perpetually enjoining such action on the part of the company.

3. It is not every case of injury to real estate of a permanent character that equity will enjoin, and the court will look to all of the facts and circumstances, and grant or withhold relief as the justice or equity of the case may require; citing *Hall v. Rood*, 40 Mich. 46; *Buchanan v. Log Running Co.*, 48 Id. 364; *Big Rapids v. Comstock*, 65 Id. 78; *Blake v. Cornwell*, Id. 467; *Miller v. Cornwell*, 71 Id. 270.

4. In this case complainant sought perpetually to enjoin the use of electricity by defendant as a substitute for horse power in the operation of a street railroad in a street upon which complainant owned *vacant* land. And it is held that the granting of an injunction would cause the defendant far greater loss than complainant will suffer, if all of his apprehensions prove true; and that, if he has the rights he claims, he has a remedy at law for their violation, to which he should be remitted under the facts developed in this case.

Appeal from Saginaw. (Edget, J.) Argued October 22, 1890. Decided November 21, 1890.

Bill to enjoin the construction of appliances for the use of electricity in the operation of a street railroad in front of complainant's premises, and to enjoin the use of electricity for the operation of said road. Complainant appeals from a decree dismissing his bill. Decree affirmed. The facts are stated in the opinion.

*Hanchett, Stark & Hanchett,* for complainant, contended:

1. The following cases establish the proposition that the planting of defendant's posts, the placing and maintaining of its wires, and the sending over them of a current of electricity, constitute a franchise, if there is any right in the defendant to do such acts and maintain such a system, and that such a franchise can only exist by *express* grant from the Legislature: *Bank v. Niles*, 1 Doug. 403, 404; *Attorney General v. Bank,* Walk. Ch. 97; Ang. & Ames, Corp. § 111; *Perrine v. Canal Co.*, 9 How. 172; *Railway Co. v. Tramway Co.*, 30 Fed. Rep. 327, 328; *Eichels v. Railway Co.*, 5 Am. & Eng. R. R. Cas. 275; *Stanley v. Davenport*, 54 Iowa, 465-467, 475, 476; *Fanning v. Osborne*, 102 N. Y. 447; *Cogswell v. Railroad Co.*, 103 Id. 21-25; *People*

*v. Newton*, 112 Id. 396, 400, 403, 404, 406–408; *Willis v. Telegraph Co.*, 37 Minn. 347; *State v. Mayor*, 49 N. J. Law, 344.

2. At the time of the passage of Act No. 35, Laws of 1867, under which the defendant is organized, the term "street railway" was understood to be equivalent to the term "horse railway," and this fact appears in the decision of all of the earlier cases on the subject of the right to construct and maintain street railways without consent of or compensation to the adjoining lot-owners; citing *Com. v. Temple*, 14 Gray, 69; *Railroad Co. v. Railroad Co.*, 12 Allen, 262; *Hinchman v. Railroad Co.*, 17 N. J. Eq. 75; *Railroad Co. v. Railroad Co.*, 20 Id. 61; *State v. Laverack*, 34 N. J. Law, 201; *Elliott v. Railroad Co.*, 32 Conn. 579; *Railway Co. v. Cumminsville*, 14 Ohio St. 523; *Hobart v. Railroad Co.*, 27 Wis. 194; *Hiss v. Railway Co.*, 4 Am. & Eng. R. R. Cas. 201; *Teachout v. Railroad Co.*, 36 Id. 108; *Craig v. Railroad Co.*, 39 N. Y. 404. In all of these cases, which arose either under statutes earlier than 1867 or about that date, the question was of the right to construct and operate a street railroad without compensation to or the consent of the adjoining lot-owners, and in all but the one last cited the right is upheld because of the particular character of such a railway as *then* understood, and the motive power was animal.

3. The question here is distinctly whether, under the terms of the act of 1867, the power was conferred to use electricity as a motive power, and for that purpose to plant and maintain posts in the streets, construct and maintain a net-work of wires, and send through this net-work a current of electricity, which is confessedly a power requiring the greatest care to avoid injury to life and property. It is a question of the *intent* of the statute, upon which the following considerations have a bearing:

*a*—The fact that street railways were, at the time the act was passed, generally known as railways operated by horses, and were not known as railways operated in any other manner.

*b*—The term "street-railways," used in the prior statutes of 1863, applied to railways whose motive power was limited to horses or other animal power.

*c*—The statute itself shows the clearest evidence that animal power was contemplated to be used, in the provisions for the companies' acquiring and owning barns and stables.

*d*—The amendment of the act of 1855 was passed when this act in question was in force, conferring upon street railways organized under the act of 1855 the power to use steam or any other power, which amendment was uncalled for and without

force if this act in question did not limit the railways organized under it to horse power.

e—If it had been intended by the statute to authorize the use of any power whatever, whether then known and used or not then known and used, some language should have been used to express definitely such intent.

f—The use of electricity and its appliances for operating railroads was then unknown.

4. In construing statutes granting franchises, the court will assume that the legislature intends to deal with that which is known, and not with the then unknown, and that it only intends to grant that of which it has knowledge; citing *Railway Co, v. Tramway Co.*, 30 Fed. Rep. 327, 330; *Bridge Proprietors v. Hoboken Co.*, 1 Wall. 146-148; *Teachout v. Railroad Co.*, 36 Am. & Eng. R. R. Cas. 114, 115; *Railway Co. v. Lake View*, 105 Ill. 211-214.

5. The only designation by the plat of the use to which Farley street is dedicated is by naming it a street, and this constitutes its dedication as a street. It expresses sufficiently the intent that it shall be used as a street, and the terms of the statute under which the plat was made limit its use to the uses of a street. The county holds the title to it in trust for the purposes of a street, and " for no other purpose whatever." The public, represented by the county, have only an easement, and the title is held in trust for the enjoyment of such easement. In behalf of the grantor, and lot-owners who are purchasers under him, equity will enforce the trust; citing *Detroit v. Railway Co.*, 76 Mich. 421; *People v. Beaubien*, 2 Doug. 270; *Riedinger v. Railroad Co.*, 62 Mich. 45; *Railroad Co. v. Hartley*, 67 Ill. 444; *Jacksonville v. Railway Co.*, Id. 540, 544; *Princeville v. Auten*, 77 Id. 325; *Warren v. Mayor*, 22 Iowa, 351; *Story v. Railroad Co.*, 90 N. Y. 157; *Lahr v. Railway Co.*, 104 Id. 291, 292; *Adams v. Railroad Co.*, 36 Am. & Eng. R. R. Cas. 12-15; *Wyman v. Mayor*, 11 Wend. 497, 498, 503; *Railroad Co. v. Nestor*, 10 Col. 403; *Railway Co. v. Cumminsville*, 14 Ohio St. 523.

6. The proposed use of the street by the defendant is not a *street* use within the intent of the grantor of the plat. There are many cases which hold that the construction and operation of a street railway, where the motive power used is *animal* power, is within the proper uses of a street; but those cases show that the facts concerning the particular road upon which the decision is based do not present a case in which the power used, or the appliances employed, were of a character which did in fact injure or endanger, or were likely to injure and

endanger, the property of the adjoining lot-owner, but, on the contrary, such feature was absent from these cases; citing *Com. v. Temple,* 14 Gray, 69; *Railroad Co. v. Railroad Co.,* 12 Allen, 262; *Attorney General v. Railroad Co.,* 125 Mass. 515; *Elliott v. Railroad Co.,* 32 Conn. 579; *Railway Co. v. Cumminsville,* 14 Ohio St. 523; *Hobart v. Railroad Co.,* 27 Wis. 194; *Railway Co. v. Railway Co.,* 51 Cal. 583; *Hinchman v. Railroad Co.,* 17 N. J. Eq. 75; *Railroad Co. v. Railroad Co.,* 20 Id. 61; *Hodges v. Railway Co.,* 10 Am. & Eng. R. R. Cas. 270; *Hiss v. Railway Co.,* 4 Id. 201; *Sears v. Railway Co.,* 20 Id. 36; *Randall v. Railroad Co.,* 17 Id. 184; *Railroad Co. v. Railroad Co.,* 22 Id. 160; *Teachout v. Railroad Co.,* 36 Id. 108; *Newell v. Railroad Co.,* 24 Id. 300, 304; *Stanley v. Davenport,* 54 Iowa, 475; *Briggs v. Railroad Co.,* 79 Me. 363; *Railroad Co. v. Nestor,* 10 Col. 403; *Mahady v. Railroad Co.,* 91 N. Y. 148.

7. The cases hold that in dedicating land as a street the grantor must have intended that improvements would be made in the street, and in the methods of its use; but there is no case which holds that any uses can be made of the street, or any methods of use can be adopted, which are subversive of any of the purposes for which the dedication was made, one of which purposes being to enhance the value of the adjoining lots by attaching to them the conveniences and privileges which arise from their bordering upon a public street; citing *Wyman v. Mayor,* 11 Wend. 497, 498, 503; *Story v. Railroad Co.,* 90 N. Y. 145, 146; *Railway Co. v. Cumminsville,* 14 Ohio St. 546, 547; *Crawford v. Delaware,* 7 Id. 469, 470; *Carli v. Railway Co.,* 28 Minn. 373; *Railroad Co. v. Reinhackle,* 15 Neb. 279.

8. It is the property right of the lot-owner that no method of the use of the street shall be adopted which endangers the use and enjoyment of his property within the boundaries of his lot, and he is entitled to protection against that which interferes with and injuries the proper use and enjoyment of his property; citing *Story v. Railroad Co.,* 90 N. Y. 145, 146; *Lahr v. Railway Co.,* 104 Id. 287–295; *Railroad Co. v. Nestor,* 10 Col. 403; *Railway Co. v. Cumminsville,* 14 Ohio St. 543–549; *Crawford v. Delaware,* 7 Id. 469, 470; *Stanley v. Davenport,* 54 Iowa, 475; *Hinchman v. Railroad Co.,* 17 N. J. Eq. 79, 80; *Adams v. Railroad Co.,* 36 Am. & Eng. R. R. Cas. 13, 14; *Railroad Co. v. Reinhackle,* 15 Neb. 279; *Mollandin v. Railway Co.,* 14 Fed. Rep. 394; *Hobart v. Railroad Co.,* 27 Wis. 200.

*D. P. Foote,* of counsel, for complainant, contended:

1. The complainant is the owner in fee of the soil to the center of the street adjacent to his premises, and the planting of these

88 MICH.—19.

poles on his land, and the operation of an electric railroad in the street, imposes a new and additional burden and servitude not contemplated in the act dedicating it as a place of passage, and not within the purposes for which a street is designated and may be lawfully used.

2. On October 16, 1838, the owners of this property placed on record a plat by which the street in question was dedicated to the public as and for a street, which plat was made under the territorial act of April 12, 1827 (2 Ter. Laws, 577). This act provided that the dedication should be deemed a conveyance, vesting the fee in the parcels intended for the public use in the county, "in trust to and for the uses and purposes therein named, expressed, or intended, and for no other use or purpose whatever." The idea that the law had the effect to divest the dedicator of his freehold interest in the land, and to vest an *actual* fee in the county, has been repudiated by this Court; citing *Wayne Co. v. Miller*, 31 Mich. 447; *Bay Co. v. Bradley*, 39 Id. 163; *Griswold v. Bay City*, 35 Id. 452; *Detroit v. Railway Co.*, 76 Id. 421, 425.

3. Complainant's contention that the operation of an electric railroad in this street imposes a new and additional burden and servitude thereon, not contemplated in the act of dedication, and not within the purpose for which a street is designed, is sustained by *Railway Co. v. Cumminsville*, 14 Ohio St. 523; and before the defendant can come within the principle of *Macomber v. Nichols*, 34 Mich. 212, it must concede to all others the right to use the street as it does,—it must admit that no one has an exclusive right to use it in any particular way.

4. No fact was ever better established by legal evidence, or more generally known to all who observe what passes around them, than the fact alleged by complainant, that the use of electricity in the manner and for the purpose proposed by the defendant is attended with such hazards as most seriously to impair the value of his property abutting on the street where used, because, as in this case, it prevents him having the benefits and advantages a city street is intended to confer upon adjacent property that has been assessed and has paid for its construction:

    *a*—It prevents free and unobstructed access to such property.

    *b*—It prevents his having or even stopping a carriage in front of his premises.

    *c*—It covers the street in front of his premises, and surrounds his (future) home with a net-work of destructive wires.

*d*—It assumes the right to plant poles and make permanent erections on his property.

5. The owner of a city lot, fronting on a city street, without regard to his ownership of the fee, has a property . interest in all the advantages a street is intended to give, and does give, lots fronting on it; citing *Story v. Railroad Co.*, 90 N. Y. 122; *Lahr v. Railway Co.*, 104 Id. 268; *Crawford v. Delaware*, 7 Ohio St. 469; Cooley, Const. Lim. 544; *Adams v. Railroad Co.*, 39 Minn. 286; *Railroad Co. v. Heisel*, 38 Mich. 71; and the New York elevated railroad cases sustain every proposition contended for by complainant.

*Marston, Cowles & Jerome,* of counsel, for complainant.

*L. T. Durand (O. F. Wisner,* of counsel), for defend-ant, contended:

1. As there is no present prospect of irreparable injury to complainant's vacant property, the relief sought is disproportionate to any injury he can possibly suffer, therefore it will not be granted; citing *Hall v. Rood,* 40 Mich. 46; *Macomber v. Nichols,* 34 Id. 212.

2. Before the complainant, as an adjacent lot-owner, can have equitable relief, the court must be satisfied:

*a*—That the injury feared is likely to be irreparable; citing *Zabriskie v. Railroad Co.*, 13 N. J. Eq. 314; *Roake v. Telegraph Co.*, 41 Id. 35.

*b*—That the injury would be different in character, and not merely in degree, than that which the general public might sustain; citing High, Inj. § 816; *Rude v. St. Louis*, 93 Mo. 408; *Lorie v. Railway Co.*, 32 Fed. Rep. 270.

*c*—That .the injury will probably, not *possibly*, happen; citing 1 High, Inj. §§ 762, 775; Wood, Nuis. § 867.

*d*—That the relief sought by the writ will not be disproportionate to the extent of the injury sustained or likely to be sustained; citing *Hall v. Rood*, 40 Mich. 46, 49.

3. The question of corporate power to adopt the system in question concerns only the common council, the defendant, and the State; citing Wood Ry. Law, § 192; 4 Am. & Eng. Enc. Law, 216, 217; *Railroad Co. v. Orton*, 32 Fed. Rep. 471;. *Jones v. Habersham*, 107 U. S. 174; *Newell v. Railway Co.*, 35 Minn. 112; *Bridge Co v. Prange*, 35 Mich. 405; *Swartwout v. Railroad Co.*, 24 Id. 293.

4. The street railway act being silent as to the mode of propelling the cars, and the propulsion of cars being the business for which defendant was incorporated, such mode is left to the

judgment and discretion of the corporation and municipality; citing Boone, Corp. §§ 40, 103; Wood, Ry. Law, § 169; Railroad Co. v. Furnace Co., 37 Ohio St. 321; Clark v. Farrington, 11 Wis. 306.

5. The street railway act itself confers upon the municipality the power to legislate for the construction, use, and maintenance of a street railway upon its streets; citing How. Stat. § 3548; and section 21, tit. 3, of the charter of the city of Saginaw in force at the time gave it power to grant to street railway companies the right to lay their tracks in the streets of the city without first obtaining the right to do so from adjoining owners, either by purchase or legal proceeding; and by subd. 10,. § 8, tit. 3, the power is given to determine and designate the routes and grade of any railroads to be laid in the city, and to restrain and regulate the use of locomotives, engines, and cars upon the same; while by sub. 36, § 8, tit. 3, the power is. conferred to regulate the setting of awning, telegraph, telephone, electric light, and other posts and poles.

6. Whether the fee belongs to the adjacent property-owner, or to the county in trust, or to the city, this public street is under the jurisdiction and control of the city, to be devoted under municipal regulation, and without additional compensation to the adjoining owner, to those uses essentially of a public character for which it was dedicated or acquired, or which are consistent with the purposes of the original appropriation, "not merely the purposes to which such streets were formerly applied, but those demanded by new improvements and new wants;" citing Cooley, Const. Lim. 556; Dill. Mun. Corp. §§ 544, 573, 575, 576; Henkel v. Detroit, 49 Mich. 249; Macomber v. Nichols, 34 Id. 216; Grand Rapids v. Hydraulic Co., 66 Id. 612; Maybury v. Gas Light Co., 38 Id. 154; Pierce v. Drew, 136 Mass. 75–80; McCartney v. Railroad Co., 112 Ill. 611; and it has been held that a change in motive power did not impose an additional servitude, and might be permitted where the railway itself was not changed from a street to an ordinary or commercial railway; citing Cooley, Const. Lim. 556; Newell v. Railway Co., 35 Minn. 112; Briggs v. Railroad Co., 79 Me. 363; Williams v. Railway Co., 41 Fed. Rep. 556; McCartney v. Railroad Co., 112 Ill. 611; Moses v. Railroad Co., 21 Id. 516; Mills v. Parlin, 106 Id. 60; Macomber v. Nichols, 34 Mich. 219.

CHAMPLIN, C. J. This suit is brought to enjoin the construction of appliances for the use of electricity in operating a street railroad on the street in front of com-

plainant's premises, and to enjoin the use of electricity for the operation of the road.

The bill avers that the complainant's premises front a distance of 240 feet upon Farley street in the city of Saginaw, and 100 feet upon Washington street. The City of Saginaw Street Railroad extends along Washington street, and is operated by horses. The defendant's street railroad has been built, and has been operated by horses, along Farley street, for about two years. Acting under an ordinance adopted by the common council of the city of Saginaw, it was engaged, at the time the suit was begun, in putting in place along the street a system of poles and wires constituting what is known as the "overhead system," intending to make use of such appliances in operating its roads by means of electricity. The system consists of poles planted on opposite sides of the street, at intervals of about 125 feet along the street. To such poles, at about 16 feet from the ground, are fastened naked, uninsulated metallic wires, extending across the street from pole to pole, called "cross" or "supporting" wires. Such cross-wires are intended to support and maintain in place, suspended therefrom, an uninsulated, naked copper wire, running longitudinally along the street over the track of the railroad, known as a "traverse" or "trolley wire," along which the current of electricity passes, and is conducted to the car by means of a follower attached to the top of the car, and which presses against the traverse or trolley wire, receiving therefrom the current of electricity, and, by means of conducting wires, carrying the electricity to the device in the car which gives propulsion to the car. The traverse wire has no shield, covering, or protection of any kind to prevent other things coming in contact with it, except a longitudinal wire placed at a short distance above it, called a "guard wire." The traverse wire is insulated

only by means of insulators placed upon the short wires connecting the traverse wire with the cross-wires.

The complainant charges that the cars to be used are larger and heavier than ordinary horse-cars, and are intended to be run at a higher rate of speed; that the force applied to propelling each car will be equal to 15-horse-power; and that the cars, by their size, speed, appearance, and manner of propulsion, are calculated to frighten horses. The entire force of electricity intended to be used for propelling the defendant's many cars continually runs along such traverse wire. Farley street is a street 66 feet wide, paved 30 feet in width, and the defendant's road has a double track for turnout opposite complainant's premises, leaving only seven feet between the track and the curb of the pavement, and leaving scant room between the track and curbing for a horse and carriage to stand. There are many telephone and electric wires already placed along the street, with which the complainant will desire to connect when he shall occupy his premises as a residence. The premises are in a part of the city devoted to residences, and are chiefly valuable for residence purposes, and the complainant purchased the premises for and intends to use them for a residence to be erected thereon.

The complainant charges that if, by any means, the electrical current should pass from the traverse wire to the cross-wires, or if any of the telephone or electric light wires should, by any means, come in contact with the traverse wire, or if a stay wire should come in contact with the traverse wire, danger is incurred of injury to life and property in the immediate vicinity. The insulators used are liable to be broken or impaired, and the wires be displaced, in many ways,—as by storms, winds, cold, moisture, and by substances coming in contact therewith, by design or accident,—and the passing current of

electricity be conducted to the ground by such cross-wires, poles, or other conductors which may chance to be at the place.   There is danger that the iron rails of the track may become charged with electricity, and, when so charged, are dangerous to persons, horses, and animals coming in contact with them.   By the dangers incurred by the employment of electricity by means of such appliances, the premises of the complainant are rendered less desirable for a residence and their .value is seriously impaired; and this system for using electricity imposes an additional burden and servitude on the street inconsistent with its proper use as a street.

In July, 1889, the common councils of the city of East Saginaw and of Saginaw City, by ordinances duly enacted, gave the Saginaw Union Street Railway permission to substitute electricity as a motive power.   Pursuant to these ordinances defendant at once began the work of putting in the system commonly known as the " overhead wire system."   In the city of Saginaw, this work proceeded to the extent of establishing and placing its poles upon either side of the street, and in using those already set under an arrangement made with the owners thereof; the placing of the copper ground-wire and attaching it to the rails to provide for the return current back to the 'dynamos and connecting the poles with the transverse wires, from which to suspend the longitudinal or trolley wire, along which the current was to pass from the power station; and the defendant expended a large sum of money before the filing of the bill of complaint, and before any objection was made by anybody.   In East Saginaw the work had been completed upon the Washington street and Genesee avenue lines, and the system was then in successful operation in those streets.   Since then, the system has been extended over the defendant's lines of tracks, comprising about 20 miles in both cities, which

cities have recently been consolidated, and are now known as "Saginaw City," and these lines are now being operated by electric power.

The complainant has four vacant lots situated at the south-east corner of Washington and Farley streets. Two of them front on Washington street, and two lie in the rear and front on Hamilton street. These are parallel streets, running north and south, and are intersected by Farley street, which runs east and west along-side of two of the lots owned by complainant. Along the side of these lots defendant's road, as originally built and operated, has a switch to enable cars to pass each other, and the track was so built that vehicles could pass between the rails and the curb-stone. It has not been changed since it was put down several years ago. Two electric light poles stand on the side of Farley street next to Potter's lots. To these defendant, with the permission of the owner of the poles, attached cross-wires running to the opposite side of the street and attached to poles there. These electric light poles are about 175 feet apart. No new or additional poles have been placed by defendant company along-side of complainant's lots. At the time the bill of complaint was filed the defendant had expended in this work, and in the establishment of its electric system elsewhere, upon its lines of track, over $70,000, and complainant had made no objection to the work done along his lots as stated. Complainant's lots are not inclosed by fences, but are open commons. The proofs taken in the case consist mainly of affidavits directed to the mode of construction and the danger in the use of electricity as a motive power for street railways. The relief asked for by Mr. Potter is that a perpetual injunction be issued restraining the operation of defendant's system by electric power.

Upon the argument, it was contended that this method

of operating street railways burdened the highway with a servitude, and was not within the intention of the grantor when he platted the ground and dedicated the streets to the public use. Complainant's counsel also contend that the Legislature has not conferred either upon the city of Saginaw the power to make such a grant to the defendant, or to the defendant to use electricity as a motive power. It is proper that we should eliminate from the case that which is not involved in the issue—

1. The right of the lot-owner to be protected against the digging of holes and placing of poles upon the highway adjacent to his lot.

2. The right of the lot-owner to be protected against burdening the street with a new servitude, such as the laying down of rails and running of street-cars in front of his premises.

Neither of these is involved in the present issue, and, stripped of all outside questions, the issue is the right of the lot-owner to enjoin the use of electricity as a motive power for the propulsion of street-cars. In so far as the exercise of such right may rest upon the legislative grant, we observe that the company is exercising such right, and claims it under legislative authority; and, if the corporation is exercising a franchise or right without legislative authority, such exercise should be inquired into by the State. The complainant is not in a position to raise the question irrespective of an injury to his rights as owner of the property injured thereby.

As to the injury to the lots of complainant by use of electricity as a motive power, no present injury is shown. A mere apprehension that injury may result in the future is not enough to warrant the court in perpetually enjoining its use, if no injury can be said to exist which is of that character against which courts of equity should enjoin. Moreover, under the facts of this case, the injury is so remote, and the damages apprehended so dispropor-

tionate to the loss which must be entailed upon defendant. by a perpetual injunction, that it should not be granted. It is not every case of injury to real estate of a permanent character that equity will enjoin, and the court will look to all the facts and circumstances, and grant or withhold relief as the justice or equity of the case may require. *Hall v. Rood*, 40 Mich. 46; *Buchanan v. Log Running Co.*, 48 Id. 364 (12 N. W. Rep. 490); *Big Rapids v. Comstock*, 65 Id. 78 (31 N. W. Rep. 811); *Blake v. Cornwell*, Id. 467 (32 N. W. Rep. 803); *Miller v. Cornwell*, 71 Id. 270 (38 N. W. Rep. 912). In this case the granting of an injunction would cause defendant a great many times more loss than complainant will suffer, if all his apprehensions prove true in the use of electricity to propel cars. Besides, if he has the rights claimed by him, he has a remedy at law for their violation, and he should, so far as the facts are now developed, be left to that remedy. For these reasons we do not consider that it is necessary to discuss or decide the points raised and elaborately argued by the counsel for the complainant in this case. He has not shown an infringement of an absolute right which calls for the interposition of a court of equity in his behalf.

The decree of the court below must be affirmed, with the costs of both courts.

MORSE, CAHILL, and GRANT, JJ., concurred. LONG, J., did not sit.