IVES *v.* EDISON.[1]

EQUITY—PROTECTION OF EASEMENT—INJUNCTION—APPEAL.
Where defendant in a suit to enjoin him from changing the location of a certain stairway in which complainant has an easement created by deed, pending complainant's appeal from a decree dismissing the bill, proceeds to tear out the stairway and substitute one in another place, the fact that the restoration of the easement as it previously existed will involve defendant in expenditure and inconvenience disproportionate to the injury, if any, occasioned by the change, will not induce the court to deny the equitable remedy and leave complainant to his action at law.  HOOKER and LONG, JJ., dissenting.

Appeal from Kent; Adsit, J.   Submitted April 10, 1900.   Decided June 5, 1900.

Bill by Marietta Ives against George M. Edison and Abraham May to enjoin the removal of a certain stairway.   From a decree dismissing the bill, complainant appeals.   Reversed.

*Charles E. Ward,* for complainant.

*Knappen & Kleinhans,* for defendants.

[1] Rehearing denied June 26, 1900.

MOORE, J.   Prior to May, 1886, there was a four-story brick block, known as the "McReynolds Block," at the corner of Lyon and Canal streets, in the city of Grand Rapids.   The block had a frontage of about 80 feet on Canal street and 90 feet on Lyon street.   The north half of the block is now owned by the Richmond estate.   The south half was then owned by Edison and Tolford.   In the center of the block, leading from Canal street, there was a stairway about 5½ feet wide, reaching to the second story of the block.   This stairway was one-half on the south half, and one-half on the north half, of the block. The only access to the upper three stories of the block from Canal street was up this stairway.   On the second story of the block was a rotunda reaching across the entire width of the two center stores.   Immediately in front of the stairway from Canal street, but at the farther side of the rotunda, was a stairway leading to the third story of the building.   A gallery running all around the rotunda enabled one to reach the rooms surrounding the rotunda in the third story.   A flight of stairs on each side of the second stairway reached from the third to the fourth floor of the building, where there was a similar gallery to the one in the story below.   The rotunda was lighted from the roof.   In May, 1886, Calvin L. Ives bought the south store in this block, subject to a mortgage of $6,000, for the sum of $16,000, and a deed was executed and delivered to him on the 10th day of that month.   The deed, in addition to conveying the south 19 feet and 9 inches of the block, contained the following provisions:

"Granting and conveying, also, for the consideration aforesaid, unto the party of the second part, his heirs, executors, administrators, and assigns, the further right and privilege, in case said block shall ever be destroyed by fire, of building, on the premises immediately north of the premises hereby conveyed, a stairway, both in front and rear, suitable for the building or buildings to be erected or rebuilt on the premises hereby conveyed and next immediately north thereof, the center line of which said front and rear stairway (or cases) shall be exactly over and

upon the north line of the premises hereby conveyed, which front and rear stairways shall be built and perpetually maintained at the mutual and proportional expense of the party of the second part hereto and George M. Edison, his heirs, executors, administrators, and assigns; hereby conveying an easement to the said party of the second part hereto in the premises north of the premises hereby conveyed, for the purpose above stated, and reserving to the said George M. Edison, his heirs, executors, administrators, and assigns, a like easement and privilege in the premises hereby conveyed, upon a like contingency. Also, hereby quitclaiming to the party of the second part hereto, for all laudable and legitimate purposes, the free, perpetual, and uninterrupted use, for himself, family, friends, customers, and lessees, of the stairs and stairways now leading into the block of buildings known as the 'McReynolds Block,' in the said city of Grand Rapids, both front and rear, and all other stairs and stairways accessible from what is called the 'rotunda' in said building or block, with a like perpetual use for a passageway and for light of said so-called 'rotunda' aforesaid, and the passageways thereto and therefrom, except such passageways as lead to the private apartments in said building or block as belong to the parties owning the premises north of the premises conveyed in this deed. Also, hereby conveying the privilege and right to hang, place, and suspend signs, pictures, etc., at the foot of said two flights of stairs hereinbefore mentioned,—said right to hang and place pictures, signs, etc., to be used in such a manner as not to interfere with or obstruct the travel up and down said stairs,—with a like right and privilege to suspend signs and pictures in the south half of said rotunda aforesaid in said building or block. Reserving to George M. Edison, his heirs, executors, administrators, and assigns, the right of use in common of the front entrance to the basement of said block, so that he, his lessees, his heirs, executors, and administrators, shall and may have a right of access to pass to and from the basement of the store next north of the premises hereby conveyed, and known as 'No. 20 Canal Street.'"

After this deed was delivered, Mr. Ives took possession of the property; renting the first story as a store, and the upper rooms for offices and for other purposes. When

this bill was filed, August 30, 1899, the one-fourth of the
block next north of Mr. Ives was owned by the defendant
Edison. The defendant May was a tenant of the Rich-
mond estate, and occupied the north half of the first story
as a double store. He also rented the store owned by Mr.
Edison. He desired to take out the partition wall between
this store and the double store then occupied by him,
making one large room of the three stores, and to take out
the center stairway, so that he would have but one en-
trance and a continuous front. He got the consent of
Mr. Edison to remove the stairway from the center of the
block, Mr. May proposing to put one somewhat narrower
just adjoining the party wall between Mr. Ives and Mr.
Edison; the whole of it to be upon the property owned by
Mr. Edison. He sought the consent of Mr. Ives, but the
latter refused to give it. Mr. Ives learned that Mr. May
proposed to remove the stairway after he had refused his
consent to its removal, and filed this bill on the 30th of
August, 1899, to prevent his tearing out the center stair-
way. After it was filed, Mr. Ives died, and Mrs. Ives is
now his representative in the proceeding. December 30,
1899, after a hearing, the bill was dismissed, with costs
against complainant. An appeal was promptly taken by
complainant.

After the decree was entered in the court below, the
defendant treated the case as though it was finally ad-
judicated in his favor, and, as appears from affidavits
filed with the briefs, has torn out the center stairway en-
tirely, and has put in the stairway as already indicated.
The proof taken before the circuit judge was contradictory
as to whether the proposed change would seriously injure
the complainant or not. It is urged here that, while de-
fendant may not have had the legal right to do what he
has done, the change is a beneficial one to the complainant,
and, in any event, has not done her such an irreparable
injury as to entitle her to the aid of a court of chancery,
and her relief, if any, is in a court at law; citing *Woods*
v. *Early*, 95 Va. 307 (28 S. E. 374); *Johnston* v. *Hyde*,

32 N. J. Eq. 453; *McBryde* v. *Sayre*, 86 Ala. 458 (5 South. 791, 3 L. R. A. 861); *Trustees of Columbia College* v. *Thacher*, 87 N. Y. 311 (41 Am. Rep. 365); *Starkie* v. *Richmond*, 155 Mass. 188 (29 N. E. 770).

We do not place the same interpretation as do the solicitors for the defendants upon the case of *Woods* v. *Early*, 95 Va. 307 (28 S. E. 374). In that case an injunction was granted by the court. In the opinion the following language was used:

"Mr. Justice Story says: 'Where easements or servitudes are annexed by grant or covenant, or otherwise, to private estates, * * * the due enjoyment of them will be protected against encroachments, by injunction.' 2 Story, Eq. Jur. § 927.

"It was said by Judge Burks in *Sanderlin* v. *Baxter*, 76 Va. 305: 'Damages in repeated suits would not compensate in such a case. The injury is irreparable, and calls for a preventive remedy, such as a court of equity only can furnish. That court constantly interposes by injunction where the injury is of that character. By the term "irreparable injury" it is not meant that there must be no physical possibility of repairing the injury. All that is meant is that the injury would be a grievous one, or at least a material one, and not adequately reparable in damages.' See, also, Kerr, Inj. 199; *Manchester Cotton Mills* v. *Town of Manchester*, 25 Grat. 825, 828; *Switzer* v. *McCulloch*, 76 Va. 777; *Anderson* v. *Harvey's Heirs*, 10 Grat. 386, 398; *Rakes* v. *Manufacturing Co.*, (Va.) 22 S. E. 498, 499."

In *Johnston* v. *Hyde*, 32 N. J. Eq. 446, cited by the counsel, the court granted an injunction, and stated:

"Mr. Johnston declares himself willing to put down through his grounds a culvert of such dimensions as the court shall direct. But without the consent of Mr. Hyde, and in the absence of any estoppel by acquiescence, the court cannot compel him to accept the substitution of a covered aqueduct for an open raceway."

In the notes to this case is a collection of authorities holding that the easement cannot be changed without the consent of both the parties interested, even though the change would be beneficial, and in nearly all of the cases

relief by injunction was granted. *Merritt* v. *Parker*, 1
N. J. Law, 460; *Tillotson* v. *Smith*, 32 N. H. 90 (64
Am. Dec. 355); *Hulme* v. *Shreve*, 4 N. J. Eq. 116;
*Dewey* v. *Bellows*, 9 N. H. 282; *Dickenson* v. *Canal
Co.*, 15 Beav. 260.

In *McBryde* v. *Sayre*, 86 Ala. 458 (5 South. 791, 3 L.
R. A. 861), it was made to appear that complainants had
changed the use of the easement very materially from
what it was when granted, and that the change was harm-
ful to the servient estate. The court, under the circum-
stances, declined to grant the writ of injunction, and left
the parties to their remedy at law.

In the case of *Starkie* v. *Richmond*, 155 Mass. 188 (29
N. E. 770), the complainant did not move, after learning
of the proposed trespass upon the passageway, until it was
consummated by the erection of an expensive building.
The court, under such circumstances, declined to interfere,
but intimated pretty clearly that, if complainant had
applied seasonably, the court would have compelled the
moving of the building.

Counsel say the proposition is universally recognized
that an injunction will be issued, in the discretion of the
court, only when there is threatened an irreparable injury,
or a continuing trespass or injury which cannot be com-
pensated by damages in a suit at law, "and, in the exer-
cise of this discretion, the court will examine into all the
circumstances of the case, and if it is apparent that the
relief sought is disproportionate to the nature and extent
of the injury sustained, or likely to be," or "if the injunc-
tion will cost the defendant many times more loss than the
complainant will suffer, the court will not interfere;" cit-
ing *Hall* v. *Rood*, 40 Mich. 46 (29 Am. Rep. 528); *Pot-
ter* v. *Street Railway*, 83 Mich. 297 (47 N. W. 217, 10
L. R. A. 176); *Bentley* v. *Root*, 19 R. I. 205 (32 Atl.
918); *Wood* v. *Sutcliffe*, 2 Sim. (N. S.) 163; *Chapin* v.
*Brown*, 15 R. I. 579 (10 Atl. 639); *Varney* v. *Pope*, 60
Me. 192; *Welton* v. *Martin*, 7 Mo. 307; *McElroy* v.

*Goble*, 6 Ohio St. 187; 2 Beach, Mod. Eq. Jur. § 713; and other cases.

An examination of these cases will show that each of them differs in some essential particular from the case at bar. In some of them the easement was not a private one created by deed. In others the injured party, after knowledge of the proposed trespass, remained inactive, and allowed a large expenditure of money to be made before invoking the aid of the court. In each of them it was made to appear that it would be inequitable for the equity court to interfere. But what are the facts in this case? Mr. Ives bought a valuable piece of property, and, as a part of the purchase, he obtained an easement that he and his grantor regarded as essential for him to possess. In the same deed which conveyed to him the title in fee to the store, there was granted to him the easement. The deed was promptly recorded, thus giving notice to the world of what his rights were. He entered upon the use of the easement, and continued to use it for nearly 13 years. The defendant Edison joined in the deed to Mr. Ives, and received part of the consideration paid therefor. The defendant May knew what the rights of Mr. Ives were. He sought to obtain his consent to a relinquishment of his easement. Failing to obtain this, with the consent of Mr. Edison he determined to take away the easement of Mr. Ives, and substitute another in the place of it. Learning of his disposition to do this, the complainant invoked the aid of the court. While the case was awaiting a final determination, the defendant saw fit to ignore the rights of the complainant, and to ignore the legal proceedings, and proceeded to remove the stairway, and to substitute another in the place of it. To accomplish this wrong has cost the defendant a large sum of money; to restore the easement thus arbitrarily taken will cost another large sum of money; the aggregate of which sums is so large that it is now said it will be entirely disproportionate to the injury done the complainant, and for that reason the court should not grant relief. If such

a contention is to prevail, then indeed is the chancery court shorn of its power to protect persons in their right of property. If this doctrine is to be sanctioned, the person engaged in large enterprises may seize upon rights of less magnitude than his own, and, if an appeal is made to the law for protection, he may ignore the right of the injured and the pendency of the legal proceeding, and if he will put money enough into the new enterprise, before a final decree is entered, so that it will cost him much more to restore the right he has wrongfully taken than a jury may regard the right as worth, he may prevent the entering of any decree whatever against himself, and may mulct the person who has appealed to the courts to protect his rights, in costs. This does not appeal to our sense of justice.

The easement possessed by the complainant was created by deed. It imposed a servitude upon Mr. Edison's land for the benefit of the estate of complainant, which, under the statute of frauds, could not be assigned, granted, or surrendered, unless by a writing or by operation of law. Washb. Easem. (4th Ed.) p. 300. It was taken for granted by defendant May that he could not move this stairway without the permission of Mr. Edison, who was the owner in fee of one-half of it; but the title in fee was no more sacred than the easement held by the complainant, created by a deed for which payment had been made. It is difficult to avoid the conclusion that if the easement to which complainant is entitled can be taken without her consent simply because defendant May will be benefited more than she will be damaged, for a like reason the title owned by Mr. Edison may be ignored. It is doubtless true that the parties ought to have been able to arrive at an amicable agreement; but, in the absence of such an agreement, the defendant had no more right to remove this stairway than he would have had to trespass upon any other portion of complainant's estate in such a way as to deprive her of its use, and then say to her that he had provided for her another estate just as valuable, and with

which she should be satisfied.  I know of no law which will justify such an invasion of the rights of property belonging to one person, to serve the convenience or necessities of another.  It is the duty of the courts to protect persons in their right of property, even though the holdings may be small, instead of justifying a trespass, or compelling the owner of the property to accept something else in the place of it.   *Gregory* v. *Nelson*, 41 Cal. 278; *Ritchey* v. *Welsh*, 149 Ind. 214 (48 N. E. 1031, 40 L. R. A. 105).  In this case a definite agreement was made between the complainant and her grantors for the use of this easement in the place it was then located.  It is for her to say whether the agreement shall be preserved in its integrity, and, before it can be changed, her consent must be obtained.   *Dickenson* v. *Canal Co.*, 15 Beav. 271; *Hills* v. *Miller*, 3 Paige, 254 (24 Am. Dec. 218).

In the case of *Stock* v. *Township of Jefferson*, 114 Mich. 357 (72 N. W. 132, 38 L. R. A. 355), the same argument was used that is urged by the solicitors for the defendants in this case.   The court said:

"It is the claim of the defendants that the loss to the complainant caused by the diversion of the water is trivial, while the damage the defendants would sustain if a permanent injunction is granted would be very great, and that therefore the injunction ought not to be allowed; citing *Potter* v. *Street Railway*, 83 Mich. 298 (47 N. W. 217, 10 L. R. A. 176), and cases there cited; *Torrey* v. *Railroad Co.*, 18 N. J. Eq. 293; 10 Am. & Eng. Enc. Law, 799, and note; *City of Logansport* v. *Uhl*, 99 Ind. 539 (50 Am. Rep. 112).  None of these authorities establish the doctrine that, where one trespassed against acts promptly after notice of the trespass, equity will not interfere, where the trespass is of a continuing nature and is irreparable in its character.  An examination of these cases will show either that it was doubtful if any damage would be done, or the complainant had not acted promptly in appealing to equity.  It does not appeal to one's sense of justice to say that the exercise of a right possessed is not of as much benefit to the possessor as the taking of that right from the owner would be to the trespasser, and therefore the trespasser should be allowed to continue his

trespass.   *   *   *   The defendants knew the complainant
was opposed to what they did.   He forbade their acts, and,
when they continued them, he caused a copy of a decree
made more than 40 years ago in favor of his grantors
to be served upon them, and, when they paid no attention
to all this, without unreasonable delay he appealed to the
court.   If they have expended considerable sums of money
in committing this trespass, it is their own fault, and they
must lose it.   It is urged very earnestly by counsel that
Mr. Stock's right to maintain his dam, and to use the
water that would naturally come to his mill, must give
way to the right of the public to improve the highways, to
drain lands, and to generally improve the country.   It is
sufficient reply to this argument to say that it has long
been the fundamental law of the land that a man is not to
be deprived of his property without due process of law and
without compensation."

*Hall* v. *City of Ionia,* 38 Mich. 493; *Koopman* v.
*Blodgett,* 70 Mich. 610 (38 N. W. 649, 14 Am. St. Rep.
527); *Haslett* v. *Shepherd,* 85 Mich. 165 (48 N. W. 533);
*Lathrop* v. *Elsner,* 93 Mich. 599 (53 N. W. 791); *Walz*
v. *Walz,* 101 Mich. 167 (59 N. W. 431); *Kent Furniture
Manfg. Co.* v. *Long,* 111 Mich. 383 (69 N. W. 657);
*Hall* v. *Nester,* 122 Mich. 141 (80 N. W. 982); 1 High,
Inj. § 804; *Corning* v. *Nail Factory,* 40 N. Y. 191;
Jones, Easem. § 218; *Gregory* v. *Nelson,* 41 Cal. 278;
*Jaqui* v. *Johnson,* 27 N. J. Eq. 526; *Johnson* v. *Jaqui,*
Id. 552; *Manning* v. *Railroad Co.,* 54 N. J. Eq. 46 (33
Atl. 802); *Ritchey* v. *Welsh,* 149 Ind. 214 (48 N. E. 1031,
40 L. R. A. 105); Washb. Easem. (4th Ed.) p. 300; 10
Am. & Eng. Enc. Law ( 2d Ed.), 429.

The circuit judge should have granted the injunction as
prayed.   It is doubtless true it will cost the defendant a
good deal to restore to the complainant the easement as it
existed when the suit was brought, but the defendant
alone is to blame for the situation.   All the work done in
the removal of this stairway has been done since this pro-
ceeding was begun.   The defendant preferred to act
without waiting for the court to determine the contro-
versy.   In doing so he acted at his peril, and is justly

chargeable with the consequences.   He should be required
to restore the easement as it existed when this bill was
filed.   A decree will be entered in accordance with this
opinion, with costs of both courts.

Montgomery, C. J., and Grant, J., concurred with
Moore, J.

Hooker, J. (*dissenting*).   The complainant owns a
building in Grand Rapids, to the second story of which
access has heretofore been had through a stairway located
in the middle of the front of an adjoining block of stores
owned by the defendants.   Complainant had an easement
over said stairway.   In remodeling their building, defend-
ants proposed to change the location of the stairway to a
point adjoining the complainant's building, thereby obtain-
ing one large store front, unbroken by the stairs; but the
complainant refused assent, and filed the bill in this cause
to enjoin such action.   The cause was heard, and the bill
was dismissed.   Thereafter the change was made.   While
it was being done, the complainant appealed, and now in-
sists that the court shall compel the defendants to restore
the premises to their former condition.   To do so would
be to entail a great loss upon the defendants, while to
deny the relief sought would result in comparatively small
loss to the complainant.   Undoubtedly she has a legal
right to have the stairs maintained until the end of time,
unless the building should be burned, in which case, under
the terms of her contract, they could only be rebuilt at the
place where defendants have put them.   No matter how
great the inconvenience to the defendants, and how little
she would be injured by the change, she may insist upon
her "pound of flesh."   To obtain it, however, she must
go to a court of law; for it is not the province of a court
of equity to grant injunctions to enforce strict legal rights
of this character, when full compensation can be given in
an action at law, and where the remedy by injunction
would be a much greater hardship upon the defendants
than the change would be to her.   A number of cases sus-

tain the propositions that an injunction is a matter of grace, not of right; that it issues only when irreparable injury is threatened, and never when there is a plain and adequate remedy at law.

Again, a court of equity may deny such relief in any case where the injunction will bear with especial severity upon a defendant, while the complainant will be a comparatively light sufferer if it be denied, as the rules applicable to specific performance, to which this case is analogous, show. *McBryde* v. *Sayre*, 86 Ala. 458 (5 South. 791, 3 L. R. A. 861); *Trustees of Columbia College* v. *Thacher*, 87 N. Y. 311 (41 Am. Rep. 365); *Starkie* v. *Richmond*, 155 Mass. 188 (29 N. E. 770); *Clarke* v. *Clark*, 1 Ch. App. Cas. 16; *Durell* v. *Pritchard*, Id. 251; *Edwards* v. *Mining Co.*, 38 Mich. 46 (31 Am. Rep. 301); *Hall* v. *Rood*, 40 Mich. 46 (29 Am. Rep. 528); *Potter* v. *Street Railway*, 83 Mich. 297 (47 N. W. 217, 10 L. R. A. 176); 3 Pom. Eq. Jur. § 1295, note. In the light of these cases, we cannot say that all invasions of easements are remedial by injunction. It is not the character of the act or motive, but the nature of the injury, that determines the right to injunctive relief. When we find that there is a plain and adequate remedy at law, the injunction should be denied, especially if to grant it would be to impose a disproportionate burden upon the defendant.

It is said that the cases cited may be distinguished from the present case. That is true, in this, viz., that the wrong was committed with full knowledge of complainant's rights and objections, and, though after her bill had been dismissed, it was commenced while the right to appeal existed. But the fact that one case is distinguishable from another is only negative authority, at best, and the danger in concluding, from the possibility of a distinction, that an opposite rule applies to all other cases, cannot be kept too steadily in view. The principles of the cases cited govern this case, unless the distinction should take it out from the class of cases to which they apply. To do that, we think that the principles already mentioned

must be subverted. We do not say that the defendants had a legal right to change this stairway, but that equity is under no obligation to be lavish with its extraordinary remedies in cases where the defendant is more likely to suffer irreparable injury if the injunction is granted than the complainant will be if it is withheld.

The circuit judge, who saw the witnesses, and doubtless was familiar with the premises, found that the change in the location of the easement would be no substantial injury to the complainant, and we are of the same opinion. We should not, therefore, require defendant to restore the premises to their former condition, but should leave the complainant to her remedy at law. The decree of the learned circuit judge should be affirmed.

LONG, J., concurred with HOOKER, J.