### SCHUTMAAT v. MELLIES.

1. EASEMENTS—RIGHT OF WAY—ACQUIESCENCE IN USE OF ROADWAY ESTABLISHED.

    In a suit to establish plaintiffs' right of way over defendants' land, evidence *held*, to establish that by acquiescence for 10 or 12 years a roadway different from that conveyed to plaintiffs had been used by them.[1]

2. SAME—EASEMENT NOT LOST BY AGREEMENT TO USE RIGHT OF WAY OTHER THAN ONE CONVEYED.

    Plaintiffs, by acquiescing in use of another roadway over defendants' land, did not lose the right obtained by them through deed to their predecessor in title.[2]

3. SAME—OWNERS OF EASEMENT ENTITLED TO USE EITHER ROADWAY CONVEYED OR ONE USED BY AGREEMENT.

    Where plaintiffs had acquired a right of way over defendants' land by deed to their predecessor, but for 10 or 12 years had, by agreement with the record owner of defendants' land, used another roadway, they were entitled to use either the right of way conveyed or the one used by them pursuant to said agreement.[3]

Appeal from Allegan; Cross (Orien S.), J. Submitted April 8, 1925. (Docket No. 35.) Decided June 3, 1925. Rehearing denied October 1, 1925.

Bill by Dena Schutmaat and others against Lina A. Mellies and another to enjoin an interference with a right of way. From the decree rendered, plaintiffs appeal. Reversed and remanded.

[1] Easements, 19 C. J. § 195; [2] Id., 19 C. J. § 150; [3] Id., 19 C. J. §§ 150, 195.

*Clare E. Hoffman,* for plaintiffs.

*I. C. Montague,* for defendants.

MOORE, J.    In 1898, by warranty deed from the owner duly recorded, there was conveyed to William Schutmaat, the husband of the plaintiff Dena Schutmaat, and the father of the other plaintiffs, 130 acres of land in the east half of section 9, Valley township, Allegan county, Michigan, and also a strip or parcel of land 3 rods in width to be used as a road, commencing at a point on the west line of the northwest quarter of the southwest quarter of section 10, about 10 rods south of the northwest corner of said land, and running thence northeasterly to the northeast corner of said described land, following the course of an old road formerly used as a lumber road and then used by Howard Phillips.

John C. Stein obtained a deed to the land across which this 3 rod strip was located.    In 1912, Mr. Stein by contract sold it to Mrs. Enck, and in 1922 she transferred her contract to Mrs. Mellies, one of the defendants.    Mr. Leach, one of the defendants, looked after the land for Mrs. Mellies.    The accompanying blue print, though not drawn to a scale, will help understand the situation.

After Mrs. Mellies obtained her land contract, trouble arose about this right of way and this litigation followed.    The trial judge found that the original right of way was located south of the buildings now on the Mellies land, but he also found, we quote from his opinion:

"The proofs are not clear upon the point, but either by verbal consent or by acquiescence, that part of the right of way extending east from the rear of the barn was closed and the plaintiffs used the west part of the right of way up to a ravine or depression, thence up the ravine to the north line of the Mellies property and thence east along the north line of the Mellies

property to the public highway, and also at times used the west portion of the right of way up to near the west side of the barn, thence north to the north line of the Mellies property, thence east to the public highway. The defendants objected to the use of this portion of the Mellies land as a part of the right of way, that is the land near the barn.

"Plaintiffs are entitled to a right of way over the Mellies lands, but they have not established a right to the use of a right of way near the barn on the west side thereof. Such a right of way would extend through the land that was formerly enclosed as a barnyard and the only land that is available for a barnyard.

"Under the pleadings and proofs in this case a right of way will be established as commencing at the northeast corner of the northwest quarter of the southwest quarter of section 10, town 2 north, range 14 west, thence west to the ravine, then southwest along the ravine to the right of way originally established, thence westerly along the right of way as originally established to the lands of the plaintiff. The right of way to be 2 rods in width to the ravine, and then 3 rods in width."

A decree was made accordingly.

Counsel for appellants insists that the right of way as established in the decree is up a sandy S shaped curve that is not according to the description in the deed, and is not where it was located by the oral arrangement which was entered into by the parties.

We quote from the brief of appellants' counsel:

"Plaintiffs' lands are conceded to be worth upwards of $5,000. By deed giving them title, they obtained a 3 rod strip to be used as a road. The value of their property depends largely upon the ease with which crops can be moved out. Because of the long and easy grade up the hill to the point 'C' and of the improvements which have been made on this road from year to year, it has become a valuable right appurtenant to the 130 acres.

"We deny the right of the court under the circumstances of this case, to take it from us and to give us in lieu thereof a right of way a rod narrower

up a steep sand hill with an S curve, subject to wash-outs, a road which, because of the nature of the soil and its location, can never be made permanently suitable for the passage of automobiles, trucks or farm loads.

"Defendants purchased with constructive notice of the location of the old Phillips road and with actual notice that it extended up the hill to the point 'C.' By what authority can the court take from us the land obtained by grant, substitute therefor the gully road and assure us that neither Stein, who is the holder of the legal title and not a party to this suit, nor some person to whom he may hereafter sell on contract, after the possible surrender or forfeiture of the Mellies contract, will not conclude that we are not entitled to the gully road and institute proceedings to send us back to the old Phillips road."

Counsel for the appellees says, we quote from the brief:

"The only question involved in this case is this: Should the plaintiffs be required to proceed west from gate No. 5 to road No. 3, or should they be allowed to turn south at gate No. 5 and thus deprive defendants of the barnyard between the buildings and road No. 3?

"When the plaintiffs adopted as their right of way the road north of the buildings, the defendants and their grantors certainly had the right to assume that the plaintiffs intended to use such right of way permanently, and to arrange their buildings and fences on the theory that the plaintiffs would never insist upon using a right of way south of the defendants' buildings.

"The plaintiffs have come into a court of equity asking equitable relief; therefore they must be willing to grant equity."

and insist the plaintiffs should be content with the decree as made.

We have already quoted the provisions of the deed and the record shows beyond peradventure that the trial judge was quite right in holding that the right of way was originally located south of the buildings.

How did the location come to be changed? The testimony is not as clear as might be desired. Mr. Frank Bassett who had known the premises for 40 years testified in part:

"Just a little south of the house at the southwest corner of the barn and on an angle a little bit west and then down to the bank of the hill I was putting up a fence when Mr. Schutmaat came down in the morning. He forbid us putting a fence across the road there that they were using. They were using the road south of the barn, that is the road south of the house too. Then he went to see Mr. Stein, and they both came back. They made arrangements to go just back of the house for the present time, around by the barn, west of the barn. They came through this lane to gate 5 and followed this road west of the barn. I was there when they did that, that is when I worked there, that was before I lived there and I was pulling stumps for Mr. Stein and Hathaway. That was when the road was changed."

Mr. Stein was sworn as a witness by the defendant, and did not deny this statement, though he did testify that he had no recollection of any such talk. As might be expected the testimony is contradictory, but the great weight of the testimony is that for a number of years prior to the beginning of this suit road number two was the one used by the plaintiffs.

At this point it may be well to quote some of the testimony of defendant Leach. On direct-examination he said:

"I first became acquainted with this place in 1922. I placed trees and did some plowing in this road in south and west of the barn; that would be south and east of the old foundation, up toward the top of the hill from the old foundation. I did that to keep them out of there. That was to keep them from turning south after coming through the gate and going by the barn. They had no business there. * * * My object in felling these trees across the road east of the old foundation was to force Schutmaat to take the other road. That is the way we bought it. There

never anybody said anything to me that they had a road there.    I supposed I could cut it off if I wanted to."

On cross-examination:

"We bought of Mrs. Enck.    We looked at the place before we bought it.

"*Q.* When you went over there to look at that place before you bought it, couldn't you see west of where you cut those trees down that they had been drawing in dirt to make a road?

"*A.* No, sir; I didn't pay any attention to those roads in there; we didn't buy it that way.

"*Q.* Couldn't you see any place where anybody traveled, where any road had gone through that ravine?

"*A.* There has been all kinds of roads all over; they still drive all over the whole 20 acres.

"*Q.* You could see plain enough when you went on that place to look at it with a view of buying it that road where you afterwards plowed it up?

"*A.* There was an old road.    There had been an old road there for years but we didn't buy it that way; we bought it with the road on the north side.

"*Q.* You could see the evidence of the old road when you bought it?

"*A.* That makes no difference.

"*Q.* Could you or couldn't you see it?

"*A.* I didn't pay any attention.

"*Q.* Did you know it was there?

"*A.* I didn't pay any attention to that.

"*Q.* Anyone going down there now can see it has been there for a good many years?

"*A.* If he can see, I suppose he can.    I didn't dig across the road on the flats.    Simon Young threw some fence posts in the ditch and dammed it up, but I threw them out.

"*Q.* What business have you going across there?

"*A.* I have got land in there.

"*Q.* Look at this diagram?

"*A.* I don't know anything about that.

"*Q.* Just look at it?

"*A.* I ain't going to look at it at all.

"*Mr. Montague:* Look at it, Tom.

"*A.* No, I don't know anything about it no more than that book.    I ain't going to bother.
"*Q.* I will explain it.
"*A.* I don't want you to."

Lydia A. Enck was sworn as a witness by the defendants.    Her attention was called to a letter written to her by George Schutmaat in 1918 which she received, and she testified that her uncle, Charles A. Watz, replied to it at her request.    In the letter appears the following:

"As far as your right of way through our land concerns, we are not particular which way your going down.    I was talking to your father about it about 3 years ago and he told us it did not make any difference just as long as you could go up and down and Mr. Stein told us that he had everything settled with Mr. Schutmaat and had the papers to that effect.    But of course if you want to [go] the old way why it will be o. k. to us so long you putt the fences and gates there."

It is not shown that when the arrangement was made between the older Schutmaat and Mr. Stein that any writing was made, and the conclusion is irresistible that the parties were trying to make an arrangement that should be agreeable to both, and that acting upon the agreement the parties for 10 or 12 years acquiesced in the use of road number 2 until Mr. Leach took the action indicated in his testimony.

The plaintiffs by what was done did not lose the right obtained through the deeds which we have quoted.    See *Lathrop* v. *Elsner,* 93 Mich. 599; *Ives* v. *Edison,* 124 Mich. 402 (50 L. R. A. 134, 83 Am. St. Rep. 329); *Murphy Chair Co.* v. *Radiator Co.,* 172 Mich. at p. 29; *McMorran Milling Co.* v. *Railway Co.,* 210 Mich. 381; *Goodman* v. *Brenner,* 219 Mich. 55.

It is said that John C. Stein is the owner of the record title and that Mrs. Mellies' interest in the land is through a purchase by land contract.

We now quote from the brief of counsel for the appellants:

"Plaintiffs are entitled, as a matter of law and of equity, for equity follows the law, to the old Phillips road, but they would be willing to take a 3 rod strip from the schoolhouse corner west to gate 5, thence turn south past the barn, striking the old road at the top of the hill at the point 'C,' and then following it down to their gate, if it were possible to do so without jeopardizing their rights.

"The difficulty lies in the fact that defendants are but purchasers upon a contract and that, as appears from the petition for injunction filed in this case, Stein, the owner, is now attempting to forfeit their rights under the contract and a decree in this case giving us the right to use road 2 would not protect us against future litigation by Stein. * * *

"When plaintiffs consented to use the way north of the buildings as a part of their way, they turned south at the gate and went west of the barn to the point 'C' and as stated, they would be willing to accept this, if the owner of the land as well as the defendants would consent thereto."

We think the plaintiffs are entitled to one of these alternatives. If, within ten days after a copy of this opinion is served upon defendants, the owner of the land, as well as the defendants, will consent to a decree for a 3 rod strip from the schoolhouse corner west to gate 5, thence turn south past the barn, striking the old road at point C, and thence to the gate of the plaintiff, then such a decree may be entered. In the absence of such consent, a decree may be entered establishing the right of way upon the line as originally located.

The decree is reversed and one may be entered here in accordance with this opinion, and appellants will recover costs of both courts.

McDONALD, C. J., and CLARK, BIRD, SHARPE, STEERE, FELLOWS, and WIEST, JJ., concurred.