ROBERT E. TURNEY *et al.* Appellees, *vs.* BERTHA SHRIVER .
*et al.* Appellants.

*Opinion filed June 24, 1915—Rehearing denied October 8, 1915.*

1. DEEDS—*a building restriction in a deed will be construed in
the light of circumstances existing at execution.*   In construing a
building restriction in a deed the court may look to the circum-
stances surrounding the parties at the time the deed was executed
and the object sought to be accomplished by such restriction.

2. SAME—*what is meant by the "front" of corner lot.*   Where
each lot in a subdivision faces upon a north and south street and
there is an alley running north and south through each block and
building lines marked on the plat running north and south through
the lots thirty feet from the north and south streets, a provision
in a deed to a corner lot that "no building shall be erected upon
the front three-fifths of such lot facing upon the side street" will

be held to mean the three-fifths of the lot fronting upon the north and south street, and the east and west street will be regarded as the side street.

3. SAME—*what is not ground for relieving party from building restrictions.* One who purchases property subject to building restrictions contained in the deed, which are reasonable and not contrary to public policy or some positive rule of law, cannot be relieved from such restrictions merely because he can use the property more advantageously without them.

4. INJUNCTION—*the party who violates injunction acts at his peril.* Where a court having jurisdiction of the subject matter and of the person of the defendant enjoins the erection of a building in violation of a building restriction the defendant acts at his peril in completing the building, and does so subject to the power of the court to compel the removal of the building or grant such other relief as may be proper under the circumstances.

APPEAL from the Superior Court of Cook county; the Hon. CHARLES M. FOELL, Judge, presiding.

ADAMS, FOLLANSBEE, HAWLEY & SHOREY, (SAMUEL ADAMS, and FRED BARTH, of counsel,) for appellants.

JOHN S. HUMMER, for appellees.

Mr. JUSTICE CRAIG delivered the opinion of the court:

Appellees filed their bill in chancery in the superior court of Cook county to enjoin appellants from constructing a store building on their lot in what is known as Sheridan Drive subdivision of the city of Chicago, in violation of certain conditions in the deeds by which the lots in the subdivision were sold and conveyed. Appellants answered the bill, denying the building they contemplated constructing would constitute a violation of such building restrictions, and further alleging that by reason of changed conditions and acquiescence on the part of the lot owners in° repeated violations of such restrictions the same were no longer valid and enforcible as building restrictions. Issue was joined and the case referred to a master in chancery to take the proofs and report the same, together with

his conclusions as to the law and the facts. The master made his report finding in favor of appellees and recommending that a decree be entered in accordance with the prayer of the bill. Upon the coming in of the master's report appellees filed their supplemental bill, alleging the building had been completed during the pendency of the suit and praying for a mandatory injunction requiring appellants to remodel and reconstruct their building so as to conform to the building restrictions in their deed. Appellants answered the supplemental bill, and a hearing was had before the chancellor on the issues raised by the supplemental bill and answer. At the conclusion of the hearing on the issues raised by the exceptions to the master's report and the issues made by the supplemental bill, the court entered a decree finding the issues in favor of appellees and granting the relief prayed in the original and supplemental bills. From this decree the appellants have prosecuted their appeal direct to this court.

It appears from the pleadings and proofs that appellant Bertha Shriver is the owner of lots 47 and 48 in Sheridan Drive subdivision of the city of Chicago. Lot 48 is situated at the northwest corner of the block, at the intersection of Wilson and Magnolia avenues. The lot is 145.5 feet in length along Wilson avenue and 42 feet in width on Magnolia avenue. Wilson avenue runs east and west through the subdivision and Magnolia avenue north and south. Lot 47 adjoins lot 48 on the south. There is an alley 16 feet wide running north and south through all of the blocks in the subdivision, and a building line running north and south through the lots is marked on the plat, located back 30 feet from the front or street line of the lots. Appellees are the owners of lot 99 in the subdivision. It faces east on Magnolia avenue and is the third lot south, across the street west from lot 48 in question here. The subdivision was laid out by the Graceland Cemetery Com-

pany in 1891 and contained 354 lots, all of which front, according to the plat, on the north and south streets. All lots were sold by reference to the plat of the subdivision, which contained the following statement as to the building line restriction, viz.: "No building shall be erected or placed upon that portion of any lot between the building line crossing said lot (wherever shown on the annexed plat) and the front line of such lot." In addition to this statement the building line is plainly marked on each lot in the block at a distance of 30 feet back from the front of each lot. On the plat lot 48 is shown as a corner lot, with the building line passing across the Magnolia avenue front of that lot and 30 feet east of Magnolia avenue. No building line restriction of any kind is indicated on that portion of the lot bordering upon and extending along Wilson avenue. In addition to the building line restrictions shown by the plat the deed from the cemetery company to the grantor of appellants contained the following provision: "Every corner lot in said subdivision (except those fronting on Clark street) is sold and conveyed upon these further conditions: that no building shall be erected upon the front three-fifths of such lot facing upon the side street, nor shall any stable, barn or privy be placed on the front three-fifths of such corner lot." The building which the appellants constructed is a one-story brick building with seven separate apartments or stores, all of which front upon Wilson avenue, and occupies all of that portion of lot 48 between the building line 30 feet east of Magnolia avenue and the alley at the rear of the lot, so that a considerable portion of the building occupies a part of the front three-fifths of that lot, and the stores front on Wilson avenue.

The main controversy in this case is as to whether Wilson avenue or Magnolia avenue is a side street, within the meaning of that term as used in the deed, and as to

whether or not conditions have so changed as to render the conditions no longer valid and enforcible as building restrictions.

Appellants insist that as lot 48 is a corner lot it has two fronts,—one on Wilson avenue and the other on Magnolia avenue,—and that as the conditions now exist Wilson avenue is the main street of the subdivision, and that in constructing the building facing on Wilson avenue they are not violating the terms of the condition which provide that "no building shall be erected upon the front three-fifths of such lot facing upon the side street," etc. Their argument is that the evidence shows Wilson avenue is now one of the principal thoroughfares of the subdivision by reason of the establishment of an elevated station on that street, a bathing beach, picture shows, theatres, and other places of amusement and business of different kinds east of there, upon Wilson avenue and the adjoining street. In determining what is meant by this provision in the deed it is proper to look at the circumstances surrounding the parties at the time of its execution and the objects and purposes intended to be subserved thereby. Without such knowledge it would be impossible to fully understand the meaning of the instrument and give effect to the words of which it is composed. (*Adams* v. *Gordon,* 265 Ill. 87.) When the deed is read in the light of the conditions and circumstances under which it was executed, there can be but little doubt as to the true intent and meaning of the parties by the language used in the deed. At the time the subdivision was laid out the land was vacant and unplatted and there were no front or side streets and no main traveled thoroughfares. When reference is had to the plat made at the time the subdivision was laid out, it will be seen that all of the lots front upon the north and south streets, that an alley runs north and south through the blocks, and that all of the lots abut upon such alleys. As commonly understood, the rear of a lot is that portion

abutting upon the alley, and the front is that portion op-
posite the rear of the lot which faces upon the street, and
the side would be that portion of the lot adjacent to the
lot or lots on either side of it.   While it is true that a
corner lot does, in a certain sense, front upon both streets,
still, in the strict sense of that term, that portion of the
lot, only, which is opposite the rear and faces upon the
street is properly designated as the front of such lot.   In
this case all doubt upon the subject is removed by the
building line indicated on the lots, including the corner
lots, located 30 feet back from the line of the north and
south street, together with the further statement on the
plat that "no building shall be erected or placed upon that
portion of any lot between the building line crossing said
lot (wherever shown on the annexed plat) and the *front
line of such lot*," which in no uncertain terms designates
that portion of the lots upon which the building line is in-
dicated as being the front of such lots.   No building line
restrictions of any kind are indicated upon that portion of
any of the lots adjacent to and extending along the east
and west streets.   When the deed is read in the light of
these facts and the other evidence in the record, we think
it very clear that by the words "side street," as used in
the deed, were meant those streets in the subdivision upon
which the lots did not face and not those streets upon
which all of the lots in the subdivision fronted.

It is next insisted that the covenants contained in the
deed have been abandoned because no general plan of im-
provement has been adopted and uniformly adhered to and
carried out with respect to buildings upon the lots in the
subdivision; that there were different restrictions in vari-
ous deeds, and that in many instances the building line
restrictions have been violated without protest; that by
reason of these facts and the change in conditions that has
taken place in the subdivision in the last few years the
appellees are estopped from enjoining the appellants from

making the contemplated improvement. A great deal of testimony was introduced bearing upon these questions by the respective parties, together with numerous photographs, plans and diagrams of the location, situation and exterior and interior arrangements of the various buildings in that vicinity. It does appear from the evidence that in some instances bay windows, porches and railings have been extended over the building line, and that flat-buildings have been constructed on some of the corner lots having entrances on the side streets as well as the front streets, although all of those buildings are apparently so designed and constructed that their fronts and main entrances are upon the north and south streets. There is also testimony to the effect that in one or two instances the cemetery company has attempted to release the grantees of corner lots from the restriction against erecting buildings on the front three-fifths of the corner lots facing the side streets, and that there is no uniformity in the language of the restrictions in the deeds, in that the deeds executed subsequent to 1900 require the grantees in such deeds, their heirs and assigns, to covenant for the benefit of the owners, from time to time, of the other lots in said subdivision that they will observe the building restrictions, and not sell soil and sand, nor build houses on the lots of less value than $3500 within seven years, etc. We have examined the volume of testimony and the numerous exhibits offered on this question, as well as upon the question of the change in conditions that has taken place in the subdivision in the last few years, and from our examination of the same we are unable to say that the finding of the master, which has been approved by the chancellor, is not in accordance with the greater weight of the evidence upon those questions. After giving the matter careful consideration we feel that we would not be justified in disturbing the findings of the decree in this respect in the present condition of the record.

While it undoubtedly may be a hardship on appellants to enforce a strict compliance with the provision in question in their deed and thereby prevent them from devoting their property to a use which, by reason of the subsequent development of the subdivision and change in conditions and travel, is apparently advantageous to them, still that fact, alone, does not warrant us in relieving them from the obligations of the bargain which they have voluntarily made. Appellants knew, when they purchased the lot, of this restriction in the deed and the manner in which it might be used and the restrictions to which it was subject. These matters were all undoubtedly taken into consideration by the parties in fixing the price of the lot at the time it was sold, and if such restriction was a damage to the lot appellants received full advantage of the same at the time they purchased the lot. At any rate, they purchased the lot subject to those conditions and restrictions, and are now bound by them so long as the restrictions are reasonable and not contrary to the public policy or some positive rule of law. We find nothing in the restrictions in question of that character, and it is therefore but equitable to hold that they must abide by the terms of the contract they have made and by virtue of which the land was conveyed to them. *Frye* v. *Partridge,* 82 Ill. 267; *VanSant* v. *Rose,* 260 id. 401.

It appears from the evidence that after this proceeding was instituted, and while the same was still pending, the appellants completed the construction of their building, and that the same is so constructed as to violate the building restrictions contained in their deed; also that while the building was in the course of construction they were repeatedly warned that if they constructed the same in such a manner as to violate the terms of their deed they would do so at their peril. After the cause had been heard by the master and his report made, appellees filed a supplemental bill setting up the fact of the completion of

the store building in violation of the covenants in the deed and asking for a mandatory injunction compelling appellants to reform and reconstruct their building so as to conform to the conditions in the deed, and the court, by its decree entered upon the original and supplemental bills, not only permanently enjoined appellants from constructing a building on the front three-fifths of lot 48 fronting on Wilson avenue, but also ordered them, within one hundred days, to take down and remove that part of the said building heretofore constructed which is located on the front three-fifths of said lot, or to so alter or reconstruct that part of said building on that part of the lot that the same shall face,—that is, have its front,—wholly on Magnolia avenue, and shall not face,—that is, have its front,— on Wilson avenue; and that a mandatory writ of injunction issue forthwith in accordance with the provisions of the decree. Appellants insist that the decree is palpably erroneous in this respect. The rule in this State is, that where a bill for an injunction has been filed and the court has acquired jurisdiction of both the person and the subject matter of the suit and the defendant does any act which the bill seeks to enjoin, such party acts at his peril and subject to the power of the court to compel a restoration of the status, or to grant such other relief as may be proper under the particular circumstances of the case. (*New Haven Clock Co.* v. *Kochersperger,* 175 Ill. 383.) Under the facts as disclosed by this record we see no error in the decree of the superior court in this respect.

Appellants will be allowed four months from the filing of this opinion in which to comply with the decree of the superior court.

For the reasons given, the decree will be affirmed.

*Decree affirmed.*