231 F.2d 333
 Ella RAMSBURG, Original Plaintiff, and Earl H. C. Lurkins,
Vernon Lurkins, Edward F. Mueller and Hazel F. Mueller,
Ralph Rohlfing and Lillian Garnet Rohlfing, Ave L. Vico and
Charlotte Vico, Frank Rille, Herbert E. Frank, Bernice
Lurkins and Mary Rille, Intervenors, Plaintiffs-Appellants,
v.
AMERICAN INVESTMENT COMPANY OF ILLINOIS, a Delaware
Corporation, and Domestic Finance Corporation, a
Delaware Corporation, Defendants-Appellees.
 No. 11610.
 United States Court of Appeals Seventh Circuit.
 Jan. 27, 1956.
 
 Harold M. Keele, Chicago, Ill., for appellant.
 John B. Martineau, Chicago, Ill., Clayton J. Barber, Springfield, Ill., for appellee.
 Before DUFFY, Chief Judge, and LINDLEY, Circuit Judge.
 LINDLEY, Circuit Judge.
 
 
 1
 Defendants move to dismiss the appeal from an order denying the motion of plaintiffs for a temporary injunction which they sought as stockholders of defendant Domestic Finance Corporation, to restrain a proposed merger of that Company with defendant. American Investment Company of Illinois. Both are incorporated under the laws of Delaware. The complaint averred that American had, through divers means, obtained some 80 per cent of the common stock of Domestic thereby gaining control; that American had utilized its stock to effectuate election of a board of directors of Domestic composed of officers of American, who were serving as Domestic's officers, and that American, through its control, had so operated Domestic as to reduce its effective position as a competitor of American in various cities and states where both corporations transact business. On August 17, 1955, Domestic mailed to its stockholders a notice of a special meeting to be held September 15, 1955, to consider and vote on a proposed merger of the two corporations. The complaint herein was filed September 7, 1955, charging that the merger would constitute a violation of Section 7 of the Clayton Act, in that its effect would be to lessen substantially competition in commerce. It was further averred that Domestic would be seriously injured by the proposed action.
 
 
 2
 The complaint prayed a preliminary injunction restraining American from voting its Domestic stock in favor of the merger at the September 15 meeting or at any other time, and that, after hearing on the merits, the temporary injunction be made final, and a decree entered directing American to divest itself of the Domestic stock it owns and granting such other and further relief as to the court might seem just.
 
 
 3
 A second count repeated all allegations of count one and averred that Domestic had suffered injury in the amount of $2,000,000 by reason of American's allegedly illegal acts in exercising control of the former, and prayed treble damages in the amount of $6,000,000, costs and attorneys' fees.
 
 
 4
 On September 14, at a hearing on the motion for a preliminary injunction, the court ordered it continued to September 20 to permit filing of briefs. During the course of the September 14 hearing, the parties reached a 'standstill' agreement which had the effect, in part, of amending the prayer for relief. At that time plaintiffs asserted that they had no objection to a vote being taken the following day in accord with the August 17 notice, if defendants would agree to take no further action to implement the merger until the court had ruled on the application for injunctive relief. Thus, their prayer for relief was changed to a request for an order restraining implementation of the proposed merger during the pendency of the cause.
 
 
 5
 On September 20, the court denied the motion for a temporary injunction. This appeal followed. On or about the same date, defendants completed the merger by filing certificates of approval with the Secretary of State of Delaware. Plaintiffs, on or about December 1, 1955, filed a supplemental complaint which alleged that the merger had been implemented as aforesaid, and prayed additional relief.
 
 
 6
 The several grounds on which defendants rely for dismissal are particularized herein as each is considered. It is first urged that the cause is moot and that, accordingly, the appeal should be dismissed. The argument on this point, in essence, is that the appeal is taken from an interlocutory order denying. plaintiffs' prayer for a temporary injunction restraining implementation of the merger; that the merger has been completed under the controlling provisions of Delaware law, and that, inasmuch as the only act sought to be restrained has been accomplished since the judgment was entered, no relief can be granted plaintiffs.
 
 
 7
 This argument must be examined in the light of the inherent power of a court of equity to afford mandatory relief. As stated in Porter v. Lee, 328 U.S. 246, at page 251, 66 S.Ct. 1096, at page 1099, 90 L.Ed. 1199, 'where a defendant with notice in an injunction proceeding completes the acts sought to be enjoined the court may be mandatory injunction restore the status quo.' Cf. Jones v. Securities & Exchange Commission, 298 U.S. 1, 17-18, 56 S.Ct. 654, 80 L.Ed. 1015. In Turney v. Shriver, 269 Ill. 164, 109 N.E. 708, the rule is framed thus: 'Where a bill for an injunction has been filed, and the court has acquired jurisdiction of both the person and the subject-matter of the suit, and the defendant does any act which the bill seeks to enjoin, such party acts at his peril and subject to the power of the court to compel a restoration of the status, or to grant such other relief as may be proper under the particular circumstances of the case.' 269 Ill. at page 172, 109 N.E. at page 711. This mandatory power is a useful tool frequently employed by equity courts in conjunction with a final decision on the merits. E.g., Texas & N.O.R. Co. v. North Side Belt Ry. Co., 276 U.S. 475, 48 S.Ct. 361, 72 L.Ed. 661; Welton v. Forty East Oak Street Bldg. Corp., 7 Cir., 70 F.2d 377, certiorari denied Chicago Title & Trust Co. v. Welton, 293 U.S. 590, 55 S.Ct. 105, 79 L.Ed. 685; Turney v. Shriver, supra; New Haven Clock Co. v. Kochersperger, 175 Ill. 383, 51 N.E. 629; Konig v. Baltimore, 126 Md. 606, 95 A. 478; Ives v. Edison, 124 Mich. 402, 83 N.W. 120, 50 L.R.A. 134.
 
 
 8
 Applying these decisions we are able to formulate the question for determination where, as here, a cause for injunctive relief is met by a contention of mootness because the status of the parties and of their relationship to the subject matter has changed. The decisive issue is whether the subject matter may yet be reached by the mandatory power of equity and the status quo restored. If so, the cause is not moot. Texas & N.O.R. Co. v. North Side Belt Ry. Co., supra; Welton v. Forty East Oak Street Bldg. Corp., supra; Turney v. Shriver, supra; New Haven Clock Co. v. Kochersperger, supra; Ives v. Edison, supra. And even where the subject matter has been so completely destroyed as to preclude restoration of the status quo, the court still has jurisdiction to grant incidental relief and the cause is not moot. Barrett v. Denver Tramway Corp., 3 Cir., 146 F.2d 701; United States v. Bates Valve Bag Corp., D.C., 39 F.2d 162.
 
 
 9
 Were this an appeal on the merits, therefore, clearly the cause would not be moot. As the court has jurisdiction of the parties and American has possession and control of the assets of Domestic, we would have jurisdiction to compel restoration, if ultimately we should determine that the circumstances of the case require that result.
 
 
 10
 And we must conclude, we believe, that our mandatory power is rendered no less effective by the fact that the appeal is taken from an interlocutory order. In Jones v. Securities & Exchange Commission, 298 U.S. 1, 56 S.Ct. 654, 80 L.Ed. 1015, the Court was faced with the question of the effect of a temporary stoporder against a securities registration statement on actions done pursuant to the statement while a hearing on a restraint proceeding was pending. The court said the proceeding was analogous to a suit for an injunction and held that any action taken by petitioner was subject to a restoration of the status quo, saying, 298 U.S. at pages 17-18, 56 S.Ct. at page 658: 'The conclusion to be drawn from all the cases is that after a defendant has been notified of the pendency of a suit seeking an injunction against him, even though a temporary injunction be not granted, he acts at his peril and subject to the power of the court to restore the status, wholly irrespective of the merits as they may be ultimately decided.'
 
 
 11
 'All the cases' to which the court referred included the leading cases of Daniel v. Ferguson, L.R. (1891) 2 Ch. 27, and Von Joel v. Hornsey, L.R. (1895) 2 Ch. 774. In Daniel, defendant, after notice of a motion for a temporary injunction forbidding construction of a building, hurried the work to near completion before the injunction could be entered. Without considering the merits of the case, the court entered a mandatory injunction to restore the status quo until the action could be finally decided. Likewise in Von Joel, the court, without regard to the ultimate rights of the parties, by mandatory injunction, ordered a building to be pulled down, it appearing that defendant had successfully dodged service of summons and had rushed the structure to completion after notice that plaintiff had filed a bill for an injunction.
 
 
 12
 State courts have frequently applied the rule. Clark v. Martin, 49 Pa. 289, 298-299; Easton S. E. & W. E. Passenger Ry. Co. v. City of Easton, 133 Pa. 505, 19 A. 486; Cooke v. Boynton, 135 Pa. 102, 19 A. 944; Whiteman v. Fayette Fuel Gas Co., 139 Pa. 492, 20 A. 1062; Meigs v. Milligan, 177 Pa. 66, 35 A. 600. In Easton, the court reinstated a dissolved preliminary injunction to restore the status quo, it appearing that while the proceeding was pending the City of Easton had forcibly removed certain streetcar rails laid by a plaintiff. In Boynton it was sought to enjoin defendant from interfering with a tramway used by plaintiff. After notice of the action, defendant demolished the structure minutes before a preliminary injunction was served on him. Plaintiff appealed from an order dissolving the injunction as moot. The court reversed, reinstating the preliminary injunction. And in Whiteman, plaintiff's action for injunctive relief to restrain defendant from shutting off the gas flow to plaintiff's factory was dismissed on defendants' agreement not to interfere with plaintiff's gas supply. After a year had elapsed, defendant, without warning, shut off the gas. Plaintiff then filed a complaint for a temporary injunction which was dismissed on the ground that the act sought to be enjoined had already been committed. This judgment was reversed, the court entering a mandatory interlocutory injunction to restore the status quo as of the date when the gas supply had been turned off. It should be observed that the court issued the injunction in each of these cases without considering the ultimate rights of the parties in the controversy. Cf. Turney v. Shriver, 269 Ill. 164, 109 N.E. 708, 711; Fredericks v. Huber, 180 Pa. 572, 37 A. 90, 91.
 
 
 13
 The last case we shall mention is Ives v. Edison, 124 Mich. 402, 83 N.W. 120, 50 L.R.A. 134 which bears a close analogy to the situation here. There plaintiff owned an easement in a stairway located on the property of defendant's lessor. Defendant sought permission to remove the stairway and replace it with a different type in a different location. Consent was denied, and, on defendant's threat to proceed with the project without consent, plaintiff filed suit to enjoin the removal. The bill was dismissed and plaintiff appealed. While the review was pending, defendant tore down the old stairway and erected a new one. The court entered a mandatory injunction commanding restoration of the stairway, saying 83 N.W. at page 122: 'While the case was awaiting a final determination, the defendant saw fit to ignore the rights of the complainant, and to ignore the legal proceedings, and proceeded to remove the stairway and to substitute another in the place of it. To accomplish this wrong has cost the defendant a large sum of money. To restore the easement * * * will cost another large sum * * *, the aggregate of which sums is so large that it is now said it will be entirely disproportionate to the injury done the complainant, and for that reason the court should not grant relief. * * * If this doctrine is to be sanctioned, the person engaged in large enterprises may seize upon rights of less magnitude than his own, and, if an appeal is made to the law for protection, he may ignore the right of the injured and the pendency of the legal proceeding; and if he will put money enough into the new enterprise before a final decree is entered, so that it will cost him much more to restore the right he has wrongfully taken than a jury may regard the right as worth, he may prevent the entering of any decree whatever against himself, and may mulct the person who has appealed to the courts to protect his rights, in costs. This does not appeal to our sense of justice.'
 
 
 14
 The chronology of the circumstances involved in the case at bar indicates that this may be a proper case for a mandatory injunction to restore the status quo. The order denying the temporary injunction was subject to plaintiffs' right to perfect a timely appeal. This they have done. It now appears that defendants completed the merger against which the injunction was sought on, or about, the same day the appealed order was entered. We have jurisdiction of the parties and of the subject matter, i.e., the assets of Domestic, which are in the possession and control of American as the surviving corporation; and we have the power to compel a restoration should our ultimate determination be that the circumstances of the case require that result. The appeal, therefore, is not moot.
 
 
 15
 The cases upon which defendants rely are inapposite. In each it appears either that the controversy had been finally settled while the appeal was pending, e.g., Amalgamated Ass'n of Street, Electric Railway & Motor Coach Employees of America, etc., v. Wisconsin Employment Relations Board, 340 U.S. 416, 71 S.Ct. 373, 95 L.Ed. 389; St. Pierre v. United States, 319 U.S. 41, 63 S.Ct. 910, 87 L.Ed. 1199; Harris v. Texas & P. Ry. Co., 7 Cir., 196 F.2d 88; Selected Products Corp. v. Humphreys, 7 Cir., 86 F.2d 821; or that no injunctive relief had been sought in the trial court and the subject matter in controversy had been sold to a stranger pursuant to a court order while an appeal therefrom was pending, Taylor v. Austrian, 4 Cir., 154 F.2d 107. The only cases which fall without those categories are otherwise distinguishable on their facts. In Johnson-Kennedy Radio Corp. v. Chicago Bears Football Club, 7 Cir., 97 F.2d 223, we dismissed an appeal as moot when it appeared that the injunction from which the appeal was taken affected only a single football game which had already been played and had assumed its niche in sports history. The decision in Wingert v. Kieffer, 4 Cir., 29 F.2d 59, rests on a unique set of circumstances not parallel to those presented here. In a bankruptcy proceeding, appellant had obtained an order restraining the receivers from selling certain securities held by a bank as pledgee. Notwithstanding this order, the lienor sold the securities to a stranger. A contempt proceeding was then instituted against the pledgee. A hearing was had, and an order entered dismissing the contempt proceeding and dissolving the restraining order. On appeal, the court held that, inasmuch as the proceeding was one for criminal contempt, the order of exoneration was not reviewable. Then, faced with the lower court's determination that the sale had been effected and title to the securities conveyed to a stranger without constituting a violation of the injunction, the court held that, since the sale had been completed, there was no subject matter which could be reached by its decree, and that the question as to whether the order was properly dissolved had become moot. Obviously, the determinative question was the contempt issue, which the lower court had finally resolved adversely to appellants' contentions, holding, in effect, that a circumvention of its injunction was not a violation of that order.
 
 
 16
 As a second ground for dismissal defendants urge that plaintiffs lack the capacity to prosecute the appeal. They argue that the challenged merger is now an established fact which can be undone only by a dissolution proceeding brought by the United States. Alternatively, they assert that plaintiffs have relinquished their position as shareholders of Domestic by filing a written demand with the merged corporate entity for payment of the full value of their shares in Domestic, and have, as a result, forfeited whatever rights they may have had as stockholders of Domestic.
 
 
 17
 When defendants' principal contention is placed in its proper perspective, we think it apparent that it is without merit. We are not concerned with an attack by private persons on a merger of two corporations after the merged status has been attained; we express no opinion as to whether persons other than the United States may prosecute an action for dissolution in the assumed case. A statement of the question before us must be predicated on the circumstances of this case, namely, that the merger was achieved during the pendency of an action to enjoin it, and is, therefore, subject to the power inherent in a court of equity to restore the status quo. In other words, plaintiffs' competence to prosecute this appeal must be tested in the light of the status which obtained when their action was filed, i.e., 'the last actual, peaceable, noncontested status which preceded the pending controversy'. Fredericks v. Huber, 180 Pa. 572, 37 A. 90, 91.
 
 
 18
 With this back-ground comment the question before us is reduced to an inquiry as to whether a stockholders' derivative suit will lie under Section 7 of the Clayton Act. We frame our answer to that question on the teachings contained in a recent opinion by the Court of Appeals for the Second Circuit in Fanchon & Marco, Inc., v. Paramount Pictures, Inc., 202 F.2d 731, 36 A.L.R.2d 1336, which involved an appeal from a judgment dismissing a stockholders' derivative, antitrust suit for treble damages and injunctive relief. The court held that the action would lie and reversed the judgment of dismissal, saying, 202 F.2d at page 734: 'Now there does not seem real doubt but that an antitrust derivative suit will lie; indeed, that seems to follow from the nature of such suits. '* * * Equity * * * traditionally entertains the derivative or secondary action by which a single stockholder may sue in the corporation's right when he shows that the corporation on proper demand has refused to pursue a remedy, or shows facts that demonstrate the futility of such a request. * * * The cause of action which such a plaintiff brings before the court is not his own but the corporation's. * * *' Mr. Justice Jackson in Koster v. (American) Lumbermen's Mutual Casualty Co., 330 U.S. 518, 522, 523, 67 S.Ct. 828, 91 L.Ed. 1067.' After discussing the applicable authorities, the court continued, 202 F.2d at page 735: 'There is an occasional flat statement * * * that no derivative antitrust suit will lie, as in Kalmanash v. Smith, 291 N.Y. 142, 157, 51 N.E.2d 681, 688; but, as indicated, the precedents actually look the other way and we can see no reason for such a view.' We agree with this reasoning and hold that plaintiffs were competent parties when this suit was brought and have remained so throughout pendency of the litigation.
 
 
 19
 Defendants' alternative argument is likewise unconvincing. After the certificate of merger had been filed with the Delaware authorities, each plaintiff submitted a written request to the merged corporation for payment of the full value of Domestic shares held by him. Could this be construed as voluntary action, defendants' assertion that they thereby elected to forfeit the status of stockholders might be persuasive. However, when that argument is considered in the light of the applicable Delaware statutes and decisions, defendants are in the position of asserting that 'we, by actions committed while your case was pending, have placed you in a position where you must elect to demand payment for the value of your holdings and surrender your stock or else remain silent, in which case your silence will constitute your consent to the merger.' That argument does not appeal to the conscience of a court of equity. Section 262 of Title 8 of the Delaware Code of 1953 provides that a dissenting stockholder may, 'within 20 days after the date of mailing of the notice' of merger, demand payment for his stock. 'Dissenting stockholders are thus put to an election by the statute,' Cole v. National Cash Credit Ass'n, 18 DelCh. 47, 56, 156 A. 183, 187, and failure to demand payment for their shares constitutes consent to the merger. Federal United Corp. v. Havender, 24 Del.Ch. 318, 11 A.2d 331, at page 343; Porges v. Vadsco Sales Corp., Del.Ch. 32 A.2d 148, at page 150; Cole v. National Cash Credit Ass'n, supra. Plaintiffs' action in this respect is not inconsistent with their diligent prosecution of this appeal and their complaint, which is still pending. We shall not permit defendants to enforce upon plaintiffs the task of anticipating the ultimate decision in their suit at their peril. They were entitled to take any action necessary to protect their rights, regardless of the final outcome of this litigation.
 
 The motion to dismiss is
 
 20
 Denied.