Lawrence C. ARNETT and Donald E. Thayer, Plaintiffs,

v.

GERBER SCIENTIFIC, INC., Gerber Garment Technology, Inc., Sulzer Brothers Limited, Camsco, Inc., Bruno Allmendinger, Walter L. Schneider, Andre Buchel and Philip T. Hauser, Defendants.

No. 83 Civ. 1051 (LFM)

United States District Court, S.D. New York.

June 30, 1983.

Lord, Day & Lord, New York City, for Gerber Scientific, Inc., Gerber Garment Technology, Inc. and Camsco, Inc. by Stephen M. Hudspeth and Charles H. Reach III, New York City.

Hopgood, Climafde, Kalil, Blaustein & Judlowe, for plaintiffs by William G. Todd, New York City; Brown, Thomas, Karger & Birkel, Dallas, Tex., of counsel.

## OPINION

MacMAHON, District Judge.

Defendants Gerber Scientific, Inc. ("GSI"), Gerber Garment Technology, Inc. ("GGT") and Camsco, Inc. ("Camsco") move to dismiss the complaint against them and to drop them as parties. Plaintiffs allege claims under Section 2 of the Sherman Act, 15 U.S.C. § 2 ("Sherman 2"); Section 7 of the Clayton Act, 15 U.S.C. § 18 ("Clayton 7"); Section 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j(b); and Rule 10b–5, 17 C.F.R. § 240.10b–5; and the common law. Plaintiffs' claims arise from the merger of Camsco with "Newco," a wholly-owned subsidiary of GGT formed for the merger, on January 3, 1983, and the events leading up to the merger.

A brief statement of the allegations of the complaint, which we accept as true, together with such reasonable inferences as may be drawn therefrom, *Murray v. City of Milford,* 380 F.2d 468, 470 (2d Cir.1967), follows.

Plaintiffs were minority shareholders in Camsco, and defendant Sulzer Brothers Ltd. ("Sulzer") was the majority shareholder. Defendants Schneider, Buchel and Hauser are employees of Sulzer who were members of the board of directors of Camsco. Defendant Allmendinger is an employee of Camsco who was "on loan" from Sulzer and who was a member of the board of Camsco. Defendant GSI is a publicly-owned holding company, and defendant GGT is a wholly-owned subsidiary of GSI.

Camsco and GGT were competitors for several years before the merger. During 1981 and 1982, GSI and GGT attempted to drive Camsco out of business, and thereby monopolize the market, through predatory pricing, product disparagement and false and misleading advertising. This pattern of conduct culminated in GGT's purchase of Sulzer's interest in Camsco and the merger of Camsco with Newco.

Sulzer had decided in 1982 to sell its share of Camsco. Despite repeated assurances, made by Sulzer through its agents to the board of directors of Camsco, that Sulzer would not sell its share of Camsco to GGT and that no serious offers had been made to purchase its share of Camsco, the sale was consummated around December 1, 1982. Members of the board of directors of Camsco, who were not employees of Sulzer, did not learn of the consummated sale and merger agreement until the board meeting on January 3, 1983 at which the merger was approved.

Pursuant to the plan of merger, plaintiffs and the other minority shareholders are to receive cash upon the surrender of their stock certificates. Plaintiffs have not yet surrendered their certificates.

Plaintiffs make five claims in five counts. Counts I and II charge that GSI and GGT violated Sherman 1 and Clayton 7, respectively. Plaintiffs sue derivatively on behalf of Camsco on these counts and seek divestiture of Camsco by GGT and money damages. Alternatively, they seek rescission.

Count III asserts that defendant Sulzer and Schneider violated Rule 10b–5. Plaintiffs sue individually on Count III and seek rescission of the merger. In the alternative, plaintiffs seek damages from Sulzer and Schneider for the difference between the amount plaintiffs are entitled to receive for their shares under the plan of merger and the amount they would have received had Sulzer waited and accepted the most favorable offer for Camsco.

Count IV charges that the merger violated the common law. Plaintiffs sue individually on this count and seek rescission.

Count V alleges that majority shareholder Sulzer breached its fiduciary duty toward minority shareholder-plaintiffs in the sale of Camsco and that board members Allmendinger, Schneider, Buchel and Hauser violated their fiduciary duties toward the company in the operation and sale of the company. As a remedy, plaintiffs seek, in the event that the merger is rescinded, recovery of damages in their derivative capacity against Allmendinger, Schneider, Buchel, Hauser and Sulzer. If the merger is not rescinded, plaintiffs, in their individual capacities, seek money damages against these defendants.

### I. *Plaintiffs' Capacity to Sue Derivatively*

Defendants first challenge plaintiffs' capacity to sue derivatively on the ground that after the merger they are no longer shareholders in Camsco.[1] Defendants argue that Rule 23.1, Fed.R.Civ.P., contains an implied requirement that the plaintiff in a derivative action be a shareholder during the litigation, as well as at the time of the conduct complained of, citing *de Haas v. Empire Petroleum Co.,* 435 F.2d 1223 (10th Cir.1970), and *Werfel v. Kramarsky,* 61 F.R.D. 674 (S.D.N.Y.1974), and that this requirement is applied to bar standing when the plaintiff is no longer a shareholder regardless of the reason for the plaintiff's disposition of the stock.

Plaintiffs argue that they have standing under federal law, citing *Ramsburg v. American Investment Co. of Illinois,* 231 F.2d 333 (7th Cir.1956), and *Miller v. Steinbach,* 268 F.Supp. 255 (S.D.N.Y.1967), and, apparently in the alternative, that they should be granted standing because they seek rescission of the merger, citing cases decided under state law. Defendants respond that there is no exception under Rule 23.1 such as is claimed by plaintiffs. Defendants distinguish *Miller* on the ground

that it antedates the effective date of Rule 23.1. Defendants, however, do not explain why the analysis in *Miller* is inapplicable to cases under Rule 23.1, and *Ramsburg* is not mentioned in defendants' reply memorandum. Before we reach this issue, however, we must decide whether state or federal law determines plaintiffs' standing to sue derivatively.

 In *Drachman v. Harvey,* 453 F.2d 722 (2d Cir.1972), the court first noted that state standing rules apply to state substantive claims, *id.* at 726–27, and then ruled that federal law determines standing to assert derivatively a violation of Section 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j(b). *Id.* at 727–30; *see also Orenstein v. Compusamp, Inc.,* 19 Fed.R.Serv.2d 466, 467 (S.D.N.Y.1974). The court stated:

"The starting point in our analysis must be that appellants' derivative right of action to vindicate a federally created corporate right is one which is conferred solely by federal law. The remedial incidents of this federally created right must, of necessity, also be controlled by federal law, because the policy of uniformity within the federal system at least with respect to the issue at bar is paramount to any interests to be served by conformity with the variousness of state rules."

453 F.2d at 728 (footnote omitted). As evidence of "the policy of uniformity within the federal system," the court pointed to: the exclusive jurisdiction of the federal courts over claims invoking the Securities Exchange Act; the fact that the Act was enacted against a body of federal law concerning shareholder derivative actions; and, "[m]ore significantly," the argument that to permit state law to determine standing in shareholder derivative cases under the Act would limit severely the scope of the rights protected by the Act. *Id.* at 728–29.

The federal statutes invoked in Counts I and II are not the Securities Exchange Act but the Sherman and Clayton Acts. How-

---

1. Minority shareholders in Camsco ceased to be shareholders under the plan of merger. Instead, they are entitled to cash upon surrender

of their stock certificates. Plaintiffs have not surrendered their certificates.

ever, we see no reason why state law should determine whether plaintiffs may maintain this action derivatively. Congress simply could not have intended that enforcement of the Sherman and Clayton Acts vary from state to state to reflect differing state rules and policies regarding shareholder derivative actions. *See Miller v. Steinbach, supra,* 268 F.Supp. at 268. We therefore apply federal law to determine whether plaintiffs have standing to sue derivatively on Counts I and II, the federal antitrust claims.

■ Turning to the merits, we have no doubt that the better result is to grant plaintiffs standing, where, as here, all of the following three elements are present: (1) plaintiffs' disposition of the stock was involuntary; (2) the disposition was related to the allegedly illegal acts of defendants; and (3) the remedy sought would result in plaintiffs regaining shareholder status.[2] This result is dictated by both the cases and common sense. It is beyond question that federal courts will provide a remedy when federal rights have been invaded. *See Miller v. Steinbach, supra,* 268 F.Supp. at 268 & cases there cited. As to common sense, it is obvious that to deny plaintiff-shareholders standing in cases such as this would insulate defendants from liability whenever defendants can consummate a short-form merger without plaintiffs' knowledge and without any opportunity for plaintiffs to obtain an injunction against it. *See Schupack v. Covelli,* 498 F.Supp. 704, 706 (W.D. Pa.1980) (state law case); *Miller v. Steinbach, supra,* 268 F.Supp. at 267. Adoption of defendants' position would be to advise directors and majority shareholders that they may break any law designed to protect a corporation or its minority shareholders so

long as minority shareholders are frozen out by a merger before they can complain of the illegal conduct. This obviously would be unconscionable.[3]

This holding does not conflict with the requirement implicit in Rule 23.1 that a plaintiff must maintain shareholder status throughout a shareholder derivative action. *Schupack v. Covelli, supra,* 498 F.Supp. at 706. The purpose behind this requirement is to ensure that the plaintiff, who sues in the name of the corporation, has an incentive to pursue the claim faithfully and vigorously. This incentive is provided by the indirect benefit the plaintiff-shareholder would receive as an owner of the corporation. *Portnoy v. Kawecki Berylco Industries, Inc.,* 607 F.2d 765, 767 (7th Cir.1979); *Werfel v. Kramarsky, supra,* 61 F.R.D. at 679. In the instant case, if plaintiffs are successful, their shareholder status will be restored and defendants will be required to pay money damages to the corporation. Plaintiffs clearly have an adequate incentive vigorously and faithfully to pursue their claims.

Defendants have cited, and we have found, no case in which all three of the elements noted above were present when plaintiffs were denied standing. Moreover, the cases primarily relied upon by plaintiffs are distinguishable. In *Bernstein v. Somekh,* 452 F.Supp. 1373 (S.D.N.Y.1978), the plaintiff's shareholder status was destroyed when the corporation "went private." The plaintiff was denied standing not because she no longer had standing as a shareholder but because there was no injury to the corporation. In *Rothenberg v. United Brands Co.,* Fed.Sec.L.Rep. ¶ 96,045 (S.D.N.Y.1977), the plaintiff's shareholder status

---

**2.** We, of course, express no opinion on whether plaintiffs would be granted standing if fewer than three of these elements were present.

**3.** State law cases recognize, in various ways, that former minority shareholders must be granted standing when defendants' actions terminated their shareholder status. In *Bokat v. Getty Oil Co.,* 262 A.2d 246, 249 (Del.1970), the court said that in a proposed merger the innocent shareholder will be protected by a court of equity. *See also Ramsburg v. American Investment Co. of Illinois, supra* (court of equity

can restore status quo) (federal law). In Texas, if shareholder status is involuntarily destroyed the court will inquire whether there was a valid business purpose to the transaction. *Zauber v. Murray Savings Ass'n,* 591 S.W.2d 932 (Tex. Civ.App.1979), *error refused,* 601 S.W.2d 940 (Tex.1980) (per curiam); *see also Lewis v. Knutson,* 699 F.2d 230, 238–39 & n. 12 (5th Cir.1983). And in *Schupack v. Covelli, supra,* 498 F.Supp. at 706, it was said that the claimed right to rescission gave equitable ownership to the former shareholders.

was destroyed by a merger subsequent and unrelated to the transaction which gave rise to the plaintiff's claims. Thus, the second (and third) of the three elements in the instant case were not present in *Rothenberg*.

## II. *Antitrust Injury*

█ Defendants argue secondly that plaintiffs have suffered no injury to a right protected by Clayton 7 because the merger did not harm Camsco's ability to compete.[4] Our Court of Appeals has answered this argument for us: "If the effect of a proposed takeover may be substantially to lessen competition, the target company is entitled to fend off its suitor," and, "[i]f free to combine, two competitors might be expected to prefer the advantages of diminished competition. But in reality it is only the resulting entity that would enjoy such advantages. The target company is entitled under § 16 [of the Clayton Act] to preserve its separate existence . as a competitor." *Grumman v. LTV Corp.*, 665 F.2d 10, 11, 16 (2d Cir.1981) (footnote omitted).[5] The Court of Appeals for the First Circuit apparently would disagree, *see A.D.M. Corp. v. Sigma Instruments, Inc.*, 628 F.2d 753, 754 (1st Cir.1980) (per curiam) ("[T]he interests of the target corporation itself ... are outside of [Clayton Act] section seven's protection."), but we, of course, follow the Second Circuit.

## III. *Antitrust Remedies*

Defendants argue finally that rescission and divestiture are not available to plaintiffs under Section 16 of the Clayton Act, 15 U.S.C. § 26, and that they should therefore be dropped as parties. Plaintiffs respond first by noting that injunctive relief other than rescission or divestiture may be appropriate, and second by challenging defendants' assertion that rescission and divestiture are not available under Section 16.

We note first that there would be no reason to dismiss defendants as parties, even if we were to accept defendants' argument, because Count II, alleging a violation of Sherman 2, would remain. We agree with plaintiffs that it is unnecessary for us to reach the disputed question whether rescission[6] or divestiture[7] is available under Clayton 16. Dismissal of plaintiffs' claim under Clayton 7 on the ground that rescission and divestiture are not available would be to rule as a matter of law that no other form of injunctive relief would be appropriate. We, of course, decline to do so at such an early stage in the litigation. Selection of an appropriate remedy, if any, must await full development of the facts.

Accordingly, the motions to dismiss made by defendants GSI, GGT and Camsco are denied. SO ORDERED.

4. Although defendants have expressed this argument in terms that would cover plaintiffs' claims under both the Sherman and Clayton Acts, defendants ignore the fact that the merger is only one of several actions that plaintiffs allege violated Sherman 2. Thus, defendants' argument can be understood as directed only against plaintiffs' Clayton Act claim (Count I) and not against plaintiffs' Sherman Act claim (Count II).

5. Section 16 grants private parties the right to sue for injunctive relief for violations of Clayton 7.

6. Defendants point out that in no case has rescission been awarded under Section 16.

However, in *United States v. Coca-Cola Bottling Co. of Los Angeles*, 575 F.2d 222, 230 (9th Cir.1978), *cert. denied*, 439 U.S. 959, 99 S.Ct. 362, 58 L.Ed.2d 351 (1978), the court stated that rescission is not without the pale of the equitable powers of a federal court enforcing the federal antitrust laws.

7. *See N.B.O. Industries Treadway Cos. v. Brunswick Corp.*, 523 F.2d 262, 278–79 (3d Cir. 1975), *rev'd on other grounds sub nom. Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 97 S.Ct. 690, 50 L.Ed.2d 701 (1977) (divestiture available under Section 16); *International Tel. & Tel. Corp. v. General Tel. & Electronics Corp.*, 518 F.2d 913, 920–25 (9th Cir.1975) (divestiture not available).