George H. KEYSER and Walter Shearer, individually, as class representatives on behalf of others similarly situated, and derivatively on behalf of Commonwealth National Financial Corp., Plaintiffs,

v.

COMMONWEALTH NATIONAL FINANCIAL CORPORATION, et al., Defendants.

Civ. No. 85–1853.

United States District Court, M.D. Pennsylvania.

March 31, 1988.

David Aufhauser, Williams & Connolly, Washington, D.C., John Havas, Harrisburg, Pa., for plaintiffs.

Walter T. McGough, Anthony J. Basinski, Pittsburgh, Pa., Robert B. Hoffman, Harrisburg, Pa., for Mellon Bank Corp.

Philip Baskin, Charles Falk, Baskin, Flaherty, Elliott & Mannino, Pittsburgh, Pa., and Edward F. Mannino, Gary R. Leadbetter, Baskin, Flaherty, Elliott & Mannino, Jon A. Baughman, Joyce K. Hackenbrach, Seth D. Linfield, Pepper, Hamilton & Scheetz, Philadelphia, Pa., Lewis S. Kunkel, Jr., Pepper, Hamilton & Scheetz, Harrisburg, Pa., for Commonwealth Nat. Financial Corp., Individual Director defendants.

## MEMORANDUM AND ORDER

NEALON, Chief Judge.

This case has a lengthy factual and procedural history as described in this court's previous memoranda and orders dated April 7, 1986 and June 30, 1987. *See* documents 51 and 111 of the record, respectively. Presently before the court is plaintiffs' request for class certification.[1] For

---

1. Also pending is plaintiffs' motion to compel production of shareholder and transactional

the reasons set forth below, the court will reserve ruling on the class certification request and will provide the parties an opportunity to submit additional arguments.

### BACKGROUND

Plaintiffs filed a motion for certification of a class action and a supporting brief on March 19, 1986. By agreement of the parties, the request for class certification was stayed until resolution of defendants' pending summary judgment motion. The court's June 30, 1987 memorandum and order disposed of the summary judgment motion and directed counsel "to meet in an attempt '[t]o resolve any outstanding class questions ... so that possible stipulations on the same may be agreed upon.'" *See* document 111 at 2 n. 2. Following a delay that was caused in part by substitution of new counsel for Commonwealth National Financial Corporation and the individual director defendants, counsel reported to the court that they were unable to resolve the outstanding class questions among themselves. A telephonic conference between counsel and the court was conducted on December 4, 1987, and by an order of the same date, the court established a briefing schedule for the class certification issue.

Defendants filed a joint motion to deny class action certification on December 24, 1987. They maintain therein that "the maintenance of this action [*i.e.*, the shareholder derivative suit] by the same plaintiffs and attorneys poses an impermissible conflict preventing the [p]laintiffs from being adequate class representatives." *See* document 117 at ¶ 11. Defendants elaborated upon this assertion in their supporting brief which was submitted on February 16, 1988.[2] They rely in their brief on the distinction between derivative actions, in which the claim and any compensation typi-

cally belong to the corporation itself, and class actions based upon shareholders' individual rights, in which the corporation is charged with invading the shareholders' individual rights and any recovery would go from the corporation to the shareholders.[3] Defendants argue:

The plaintiffs' dual representative status presents an inherent conflict of interest. *Charal v. Andes, supra; Petersen v. Federated Development Co.,* 416 F.Supp. 466 (S.D.N.Y.1976); *Hawk Industries, Inc. v. Bausch & Lomb, Inc.,* 59 F.R.D. 619 (S.D.N.Y.1973); *Ruggiero v. American Bioculture Inc.,* 56 F.R.D. 93 (S.D.N.Y.1972). The conflict arises because the derivative action seeks to enhance the value of the corporation generally by seeking recovery *for* the corporation on its own behalf. Conversely, plaintiffs in the class action, some of whom are former shareholders, seek a recovery *against* the corporation. Naturally, plaintiffs will pursue more vigorously the claim, individual or derivative, which will bring them the greatest economic benefit. Vigorous presentation of one claim will suffer. Therefore, the same plaintiffs cannot fairly and adequately protect the interests of *both* the class and derivative action shareholders.

*See* document 122 at 6.[4] Defendants also indicate that "[i]f [their] present motion is denied, [they] intend to raise several other reasons why a class action is inappropriate in this case." *Id.* at 3 n. 1.

On January 13, 1988, plaintiffs filed a brief in opposition to defendants' motion to deny class certification. Plaintiffs cite a number of cases holding that there is no *per se* rule prohibiting shareholders from simultaneously bringing both a derivative suit and a direct action based upon individual shareholders' rights. *See, e.g., In re*

---

lists. This motion will be held in abeyance until all disputes over plaintiffs' request for class certification are resolved.

2. Defendants apparently had intended to file their supporting brief with their motion on December 24, 1987. Upon notification from the court on February 16, 1988 that their supporting brief had not yet been received, defendants promptly submitted it.

3. Plaintiffs no longer request any injunctive relief and now seek only monetary damages in this case. *See* document 118 at 1–2.

4. The court notes that none of the cases cited by defendants involved a merger situation.

*Dayco Corp. Derivative Securities Litigation,* 102 F.R.D. 624 (S.D.Ohio 1984); *Bertozzi v. King Louie Intern., Inc.,* 420 F.Supp. 1166 (D.R.I.1976); and *Miller v. Fisco, Inc.,* 63 F.R.D. 132 (E.D.Pa.1974). These cases encourage courts to look behind the "surface duality" and "theoretical conflict of interest" present when derivative and individual actions are joined and to determine whether an "actual" conflict exists.

In their opposition brief, plaintiffs also address the effect of the Mellon/Commonwealth merger upon their standing to maintain their shareholders' derivative suit, an issue that was not previously raised by defendants. Plaintiffs rely upon the decision in *Miller v. Steinbach,* 268 F.Supp. 255 (S.D.N.Y.1967) (applying Pennsylvania law), which stands for the propositions that: (1) the surviving corporation upon merger does not inherit the former corporation's derivative right of action when the surviving corporation has wrongfully taken part in the very acts complained of, and (2) when the surviving corporation has unclean hands, any recovery from a derivative suit against the former corporation could go directly to the shareholders of the former corporation.

Defendants filed a joint reply brief on January 25, 1988. In response to plaintiffs' assertion that they did not lose their standing to maintain the derivative action, defendants cite the opinion in *Overberger v. BT Financial Corp.,* 106 F.R.D. 438 (W.D.Pa.1985). In *Overberger,* the court held that the plaintiffs/shareholders had lost their standing to bring a derivative suit under Fed.R.Civ.P. 23.1 inasmuch as their corporation had become legally extinct by way of a merger that was unrelated to the alleged grounds for the derivative action. The *Overberger* court noted that under Rule 23.1, an implied condition for a derivative suit is that the named plaintiffs must

remain shareholders of the corporation throughout the pendency of the litigation, and the court stressed that the reason for this requirement is the fear that one who loses his/her shareholder interest during the course of litigation may also lose incentive to pursue the litigation adequately.

In their reply brief, defendants also rely upon the decision in *Arnett v. Gerber Scientific, Inc.,* 566 F.Supp. 1270 (S.D.N.Y. 1983), in which the court allowed shareholders of a former corporation to pursue a derivative suit, after their corporation lost its legal existence through merger, when the following conditions existed:

(1) the plaintiffs' disposition of their stock was involuntary;

(2) the disposition was related to allegedly illegal acts of the defendants; and

(3) the remedy sought would result in the plaintiffs regaining their shareholder status.

Applying the *Arnett* criteria to the instant case, defendants contend that inasmuch as plaintiffs now seek only monetary relief, the third prong in the *Arnett* test is not satisfied. Further, defendants attempt to distinguish the decision in *Miller v. Steinbach, supra,* arguing that while that decision is premised upon wrongdoing of the surviving corporation, there is no evidence in the present record to suggest that Mellon Bank, the surviving corporation here, acted improperly at any relevant time.

Finally, defendants in their reply brief raise for the first time several new objections to class certification, including the following: plaintiffs cannot recover twice for the same injury, *see* 15 U.S.C. § 78bb(a); there are conflicting interests between the former Commonwealth shareholders who received cash for their Commonwealth shares and those who received Mellon stock as a result of the merger;[5]

---

**5.** If defendants wish to reassert this objection, they should attempt to answer the following queries: What did plaintiffs Keyser and Shearer receive in return for their Commonwealth shares? If the named plaintiffs received cash, why would they not fairly and adequately protect and represent the class of former Commonwealth shareholders even though some of those shareholders who obtained Mellon Bank stock might not *desire* to participate in a suit against Mellon Bank? In other words, why would plaintiffs' representation of the class be less fair and adequate merely because some former

and there would be a conflict of interest if the named plaintiffs represented in the proposed class action those persons who held Commonwealth shares during the period of September 25, 1985 through December 30, 1985 while simultaneously representing in the derivative action those persons entitled to recover thereunder, *viz.,* those who held Commonwealth shares on the date on which the merger was consummated, April 7, 1986.

No further documents regarding class certification have been submitted.

## DISCUSSION

The court discerns only two issues that have been properly presented and adequately briefed by the parties to allow the court to make a ruling thereon at this time. These two issues are: (1) the alleged conflict of interest inherent in plaintiffs' pursuit of both a derivative action and a class action based upon Commonwealth shareholders' individual rights,[6] and (2) the effect of the Mellon/Commonwealth merger on plaintiffs' standing to maintain the derivative action.

### I. Inherent Conflict of Interest

■ This court agrees with the line of cases cited by plaintiffs that reject a *per se* rule prohibiting shareholders from simultaneously bringing both direct and derivative actions. The better reasoned and predominant[7] rule of law is to look behind the "surface duality" of these two types of actions and allow them to proceed together unless an actual conflict emerges. Specifically, this court finds merit in the following

passage from *In re Dayco Corp. Derivative Securities Litigation:*

> In both *Ruggiero v. American Bioculture, Inc.,* 56 F.R.D. 93, 94–95 (S.D.N.Y. 1972) and *Hawk Industries, Inc. v. Bausch & Lomb, Inc.,* 59 F.R.D. 619, 623–24 (S.D.N.Y.1973), the Courts held that stockholders pursuing individual claims could not also serve as representatives of a class of derivative plaintiffs. These decisions plainly relied on the theoretical distinction between individual and derivative stockholder suits. That distinction is just that, a theoretical one, not rooted in the realities of most individual and derivative suits, which usually are 'equally contingent upon the proof of the same nucleus of facts.' *Bertozzi,* 420 F.Supp. at 1180. Typically, *both* such suits will attack some sort of alleged misconduct by corporate management, and diligent counsel can hardly be expected not 'to attack all fronts with equal vigor.' *Id. See also,* Henn & Alexander at 1045–47. For these reasons, the Court joins Judge Frankel in rejecting a per se rule against counsel representing both an individual and derivative plaintiff. Henn & Alexander at 1078 (footnote omitted).

102 F.R.D. at 630.[8]

■ In the present case, defendants have failed to establish an actual conflict; rather, it appears that both the derivative and direct actions are "equally contingent upon the proof of the same nucleus of facts." Moreover, as discussed *infra,* there may not even be any conflict at the remedy stage since plaintiffs, in order to be entitled to recover in their derivative action, must prove that Mellon participated in

---

Commonwealth shareholders received cash while others obtained Mellon stock?

6. To maintain a class action, plaintiffs must demonstrate that "the representative parties will fairly and adequately protect the interests of the class." *See* Fed.R.Civ.P. 23(a)(4).

7. "[T]he case law is virtually unanimous that one counsel can represent a stockholder bringing *both* an individual *and* a derivative action" (emphasis in original). *In re Dayco Corp. Derivative Securities Litigation,* 102 F.R.D. at 630.

8. If and when plaintiffs prove their allegations and the remedy stage is reached, the court may

take corrective measures to resolve any actual conflicts which arise at that time. *See Bertozzi v. King Louie Intern., Inc.,* 420 F.Supp. at 1180 ("At most, defendants perceive a potential conflict regarding the appropriate form of remedy to be fashioned in the event plaintiffs prevail ... in both the primary and derivative actions.... 'If the potential conflict ... should materialize when and if remedy proceedings are reached in this case, Rule 23 gives this Court sufficient flexibility to take appropriate corrective measures at that time.' ").

wrongdoing. Thus, the court is unable to conclude that the mere fact that plaintiffs are pursuing a derivative action renders them inadequate class representatives.

## II. Standing

■ Defendants rely principally on two decisions, *Overberger v. BT Financial Corp., supra,* and *Arnett v. Gerber Scientific, Inc., supra,* in arguing that plaintiffs lost their standing to maintain their derivative action as a result of the Mellon/Commonwealth merger. Neither decision, however, supports such a conclusion. *Overberger* is clearly distinguishable because the merger in that case was unrelated to the grounds for the derivative suit. In fact, the *Overberger* court remarked, "Neither the plaintiffs nor any other former ... shareholder has challenged the merger transaction. This fact distinguishes the case of *Miller v. Steinbach,* 268 F.Supp. 255 (S.D.N.Y.1967)...." 106 F.R.D. at 445. Further, while plaintiffs in the present case do not meet the third criterion listed in *Arnett,* that court stated, "We, of course, express no opinion on whether plaintiffs would be granted standing if fewer than three of these elements were present." 566 F.Supp. at 1273 n. 2.

The decision most analogous to the instant case is *Miller v. Steinbach, supra,* since the plaintiffs/shareholders therein, like the present plaintiffs, alleged that the surviving corporation participated in wrongdoing during the events leading to the merger. The *Miller* court commented:

It would appear to me that a grossly inequitable decision would be reached if I were to hold that a merged corporation and/or its shareholders are barred from suing where the very merger itself took place because of the allegedly wrongful activities of the directors of the old corporation and the management of the surviving corporation among others. *Cf. May v. Midwest Ref. Co.,* 121 F.2d 431 (1st Cir.), *cert. denied,* 314 U.S. 668, 62 S.Ct. 129, 86 L.Ed. 534 (1941). To hold that the surviving corporation inherits a derivative right of action where said corporation has wrongfully taken part in the very acts complained of would be to

reach an incongruous and highly inequitable result.

268 F.Supp. at 267. The *Miller* court also noted that under such circumstances as averred by the plaintiffs/shareholders, any recovery in the derivative suit could go directly to them.

This court finds the *Miller* rationale persuasive and will follow the *Miller* approach. Plaintiffs will be afforded the opportunity to prove that Mellon participated in wrongdoing during the Mellon/Commonwealth merger and related events. Conversely, if plaintiffs are unable to establish at trial any wrongdoing on the part of Mellon, or if they are unable to raise a material fact dispute on that issue in the face of a dispositive motion by Mellon, it would appear that the right to bring a derivative suit had passed to Mellon upon consummation of the merger and that plaintiffs had, at that point, lost their standing to pursue the derivative action.

Finally, the court notes that the result reached herein is consistent with the purpose of the implied requirement under Fed. R.Civ.P. 23.1 that the plaintiffs in a derivative action must remain shareholders throughout the pendency of the proceedings. Again, the reason for this requirement is that "[a] non-shareholder or one who loses his shareholder interest during the course of the litigation may lose any incentive to pursue the litigation adequately." *Overberger v. BT Financial Corp.,* 106 F.R.D. at 442. In the present case, since it remains a possibility that plaintiffs may obtain recovery in the derivative action, it is unlikely that they will lose their incentive to pursue the same.

## CONCLUSION

The court is concerned by defendants' attempt to have plaintiffs' request for class certification adjudicated on a piecemeal basis, *see* document 122 at 3 n. 1, and by the raising of new arguments for the first time in defendants' reply brief. The court recognizes, however, that the time period for discovery regarding the class question did not expire until February 9, 1988. *See*

document 116 at ¶ 2. Rather than rule on plaintiffs' request for class certification at this juncture, the court will allow defendants twenty (20) days to present and brief all remaining objections to class certification that they wish to pursue. If any further objections to class certification are raised, plaintiffs will be afforded another twenty (20) days to respond. Counsel are encouraged to communicate with one another in a good faith effort to resolve or narrow any disputes over class certification that may remain subsequent to this ruling.